The United States Mortgage Company v. Henderson et al.

No. 12,850.

THE UNITED STATES MORTGAGE COMPANY v. HENDER-
SON ET AL.

ATTACHMENT.—*Abandonment of Proceeding.—Dismissal. —Judgment.—Supreme
Court.—Practice.*—Where an attachment proceeding is instituted, as aux-
iliary to an action for the recovery of a debt, and a personal judgment
is taken, without an adjudication of the proceeding in attachment, the
latter will be deemed abandoned. The taking of the judgment is equiv-
alent to a dismissal of the attachment proceeding, and there being a full
appearance to the main action by the defendant, no available error can
be predicated upon a ruling relative to the auxiliary proceeding.

PLEADING.—*Complaint.—Defect in Form.*—If a complaint state a cause of
action, reciting the facts so as to enable a person of common understand-
ing to know what was intended, the judgment will not be reversed on
account of defects in the form of pleading.

PRINCIPAL AND AGENT.—*Mortgage.—Contract.—Subrogation.*—Where a con-
tract of agency provided that the agent was to loan money for the prin-
cipal upon mortgage security, and that the former should become per-
sonally liable to the latter for all instalments of interest on such money
loaned, which were not paid within ten days after they became due,
such agent, upon the payment of any such instalment of interest under
the contract, would be entitled to a remedy against the borrower for the
amount so paid, and to participate in the mortgage security to the extent
of such payment.

SAME.—*Foreclosure.—Instalments of Interest.*—Where a loan company, mort-
gagee, avails itself of a provision in the mortgage that upon a default
in the payment of an instalment of interest, the entire debt should be-
come due, and forecloses the mortgage, taking judgment for the whole
amount, principal and interest, it can not afterwards enforce a contract
with its agent who made the loan, which provided that the latter should
be liable to the principal for all instalments of interest on moneys
loaned by him as such agent, which were unpaid ten days after they
became due.

SAME.—In such case the decree of foreclosure merged the entire contract
with the mortgagor, as well in respect to instalments of interest matured
as in respect to those not matured, in the judgment and decree, and
the agent would not, after such foreclosure, be liable under his contract
for any of such instalments.

SAME.—*Loan Agent.—Attorney.—Liability of Principal for Additional Services
Rendered by Agent.*—In a contract between principal and agent, that
the latter should make loans of money on bonds and mortgages and
collect money to become payable on such loans, a provision that the
former should not be liable for any charges, disbursements or commis-

The United States Mortgage Company v. Henderson et al.

sions to the agent for his services in such agency, does not relieve the principal from liability to the agent for services rendered by him at the former's request, in foreclosing mortgages and collecting moneys by legal proceedings, looking after repairs to and caring for property bought in by the principal upon foreclosure of its mortgages, for renting and collecting rents of such property, and looking after the payment of taxes, and keeping up insurance thereon, and other like services.

ATTORNEY AND CLIENT.— Good Faith.— Diligence.— Violation of Instructions.— Ratification.— Compensation of Attorney.— Where an attorney, in good faith, and acting as he believes for the best interests of his client, exercising reasonable skill and diligence, takes steps in the foreclosure of a mortgage, and the appointment of a receiver for mortgaged property, in violation of instructions of his client, and the latter afterwards ratifies and accepts the benefits of such action, and adopts the receivership established, such attorney is entitled to a reasonable compensation for his services.

SAME.—In such case, if the attorney acted in bad faith, or if he had violated the instructions of his client, and the proceedings taken by him had not been ratified, he would be entitled to no compensation for the services so rendered.

COMPROMISE.—Contract.—Consideration.—In order that a compromise may constitute a sufficient consideration for the enforcement of an executory contract, there must have been an actual bona fide claim, founded upon a colorable right, about which there was room for honest doubt and actual dispute.

From the Marion Superior Court.

T. A. Hendricks, C. Baker, O. B, Hord, A. W. Hendricks, A. Baker and E. Daniels, for appellant.

J. E. McDonald, J. M. Butler and A. L. Mason, for appellees.

MITCHELL, J.—This suit involved the settlement of accounts between the United States Mortgage Company and William Henderson. It appears from the record that the United States Mortgage Company is a corporation organized under the laws of the State of New York, for the purpose of loaning money on bonds and mortgages. In October, 1874, this corporation entered into a written contract with William Henderson and Alexander C. Jameson, whereby the latter were appointed its agents, for the purpose of making loans of money in the State of Indiana, and collecting

moneys to become payable upon the loans thus made. Among other stipulations, the contract of agency provided that if the interest upon any loan, made by the agents therein appointed, should be unpaid, and in arrears for the period of ten days after the same should fall due and become payable, then, in every such case, the agents themselves should immediately pay the amount so in arrears to the company. The contract provided further, that the mortgage company should not be liable to the agents for any charges, disbursements or commissions for their services in connection with the agency, and that the agency might be terminated by the company at any time.

Sums aggregating about $450,000, in amount, were loaned by Messrs. Henderson & Jameson, during the years 1874, 1875 and 1876, under this contract. In 1878, the mortgage company, having some time before refused to furnish any more money to loan, Jameson withdrew from the business, and turned over and assigned his interest in the accounts to Henderson. After the termination of the relation of principal and agent, a disagreement arose as to the state of the accounts between the mortgage company and Henderson. The result was the institution of this suit by Mr. Henderson, on the 8th day of October, 1881, in the superior court of Marion county. He alleged in his complaint that the company was indebted to him in the sum of $14,-424.68, with interest from the dates of the several amounts charged, as shown in the bill of particulars filed with his complaint. The bill of particulars exhibited with the complaint stated an itemized account against the " United States Mortgage Company to Wm. Henderson, debtor." The bill stated thirteen separate items, in different amounts, of which the following is an example:

" 1878. To foreclosing mortgage *v.* J. M. Hume, $600."

It also stated two items in different amounts, one of which is as follows:

" 1881. To general attention to your business from March

8th, 1878, to September 8th, 1881, at rate of $1,800 per annum, $6,300."

There were four items, of which the following is an example:

"To cash paid by Alexander C. Jameson and William Henderson, on the loan of Joseph K. English, May, 1876, $200, November, 1876, $200, and May, 1877, $200, which sums were embraced in the decree of foreclosure of said mortgage, and bid in for the full amount by said United States Mortgage Company, and the interest of said A. C. Jameson, assigned to me, $600."

Concurrently, with the filing of the complaint, a writ of attachment was sued out. It is claimed that the attachment was improvidently issued, and that the court erred in overruling a motion to quash the writ. The event of the suit was such that it is now of no consequence whether this ruling was correct or otherwise. The attachment was abandoned. This follows from the fact that a personal judgment was taken against the defendant without an adjudication of the proceedings in attachment. Taking a personal judgment without more was equivalent to a dismissal of the attachment. The judgment stands as though no auxiliary proceedings had ever been commenced. *Sannes* v. *Ross*, 105 Ind. 558; *Smith* v. *Scott*, 86 Ind. 346; *Lowry* v. *McGee*, 75 Ind. 508.

The litigation having progressed to final judgment, after a full appearance to the action by the mortgage company, no available error can now be predicated upon a ruling in respect to the attachment proceeding, which was in effect dismissed.

The court overruled a demurrer to the complaint, and this ruling is the subject of the second assignment of error.

We make the following extract from the complaint, which is all that bears upon the subject presented: "The said defendant, the United States Mortgage Company, is indebted to plaintiff in the sum of $14,424.68, with interest thereon from the dates of the several items of account, the bill of particulars of which is filed herewith and hereby made a part of the complaint, marked 'Exhibit A.'"

The complaint, as has already been seen, is upon an account stated against the United States Mortgage Company, to William Henderson, Dr. The objection made to the complaint is, that it fails to show that any service had been rendered by the plaintiff for the defendant at its request, or with its knowledge or approval, or that any money had been expended for it, on its account, or that it ever promised to pay, etc. The complaint does not furnish a model of good pleading, but applying to it the liberal rule of the code, which only requires that the facts be stated, so as to enable a person of common understanding to know what was intended, we should not feel justified in reversing the judgment for what seems at most a defect in the form of pleading. Sections 338, 376, 658, R. S. 1881.

Considering the complaint and the bill of particulars together, the inference fairly arises that the indebtedness charged in the complaint was for services rendered the mortgage company, in foreclosing certain mortgages therein specified, and for general attention to its business, etc. Applying the liberal rule of construction of pleadings, which the code enjoins, we are constrained to hold that there was no error in overruling the demurrer to the complaint.

Besides denying generally any indebtedness to the plaintiff, the mortgage company presented special matters of set-off and counter-claim. It appeared that a loan of $60,000 had been made by the agents to the Indianapolis Journal Company. This loan was to run ten years, and was secured by a real estate mortgage. The interest was to be paid semi-annually at the rate of 9 per cent., this agreement being evidenced by twenty separate interest coupons for twenty-seven hundred dollars each.

The mortgagors made default in the payment of some of these coupons. The mortgage company, predicating its claim on that provision in the contract of agency, which required the agents themselves to pay all interest on loans made by them, and which remained in arrears ten days after it became

The United States Mortgage Company *v.* Henderson *et al.*

due, asserted that the agents were indebted to it under the contract for the unpaid interest coupons on the loan to the Journal Company.

To this claim it was replied that some of the coupons fell due before, and some after, the month of October, 1879, and that the mortgage contained a provision therein written, to the effect that a failure by the mortgagor to pay any of the interest coupons within a month of maturity gave the mortgagee the privilege, at his election at any time thereafter, of treating the principal debt, as well as the arrearages of interest, as due. In pursuance of this provision, the mortgagor having made default in paying the coupons which fell due respectively in February and August, 1879, the mortgage company exercised its option, and elected that the principal and arrearages of interest should be due, and foreclosed the mortgage for the whole in October, 1879.

Without further detailing the facts put forward in the various paragraphs of the pleadings, it is enough to say they present the following questions: Two instalments of interest having become due on the loan to the Journal Company, for the payment of which Henderson and Jameson had become liable under their contract with the mortgage company, can they be held for the payment of these instalments after the mortgage company elected to treat the whole debt as due, and after it has foreclosed the mortgage and included both principal and interest in its judgment and decree against the Journal Company? After the mortgage company elected to treat the principal sum as due, and proceeded to foreclose its mortgage, can it now look to Henderson and Jameson for payment of the interest subsequently accruing on the decree?

In respect to the first proposition: Assuming that the matter was a proper subject of counter-claim—which is fairly open to doubt—since the mortgage company availed itself of the option to treat the principal debt as due, because of the default of the mortgagor in failing to pay interest, and proceeded to merge both the principal and unpaid interest

into a judgment and decree in its favor, we can discover no principle which would justify it now, while holding a decree and judgment against the mortgagor for the whole, in pursuing a remedy against Henderson and Jameson, upon their personal contract. The stipulation in the contract, by which Henderson and Jameson agreed, in case any interest on loans negotiated by them should remain in arrears for a period of ten days, that they would immediately pay such interest themselves, put them in such relation to the loan as entitled them to a remedy against the borrower, and to participate in the security, in the event they were called upon to pay the interest coupons. Instead of electing to require its agents to pay the arrearages of interest, and to continue the loan, the mortgage company exercised its option and appropriated the coupons, and declared a forfeiture of the credit to the borrower. The coupons, which drew ten per cent. interest as soon as they matured, would have become the property of Henderson and Jameson upon payment by them. They were secured by the same mortgage that secured the principal. The mortgage company took a decree and judgment for the whole, thus depriving its agents of their security, and of their right to proceed against the borrower. It may not now, while prosecuting its remedy upon the mortgage, which presumably covers property of sufficient value to satisfy the whole debt, pursue a personal remedy against its agents. To permit this would enable the mortgage company to use the interest coupons to accomplish its own ends, so far as forfeiting the borrower's credit and obtaining a decree of foreclosure for the whole debt, and then, after having complicated and embarrassed Henderson and Jameson in their remedy, to proceed against them personally. Henderson and Jameson can have no remedy against the mortgagor, except as they are subrogated to the securities of the mortgage company. The company having appropriated the coupons, and merged them in a decree in its own name, it is difficult to perceive how the agents could

now proceed against the Journal Company, if they are compelled to pay the interest coupons.

Our conclusion is, that the effect of the agreement between the mortgage company and its agents was such as to authorize it to require them to take up the interest coupons, upon which default had been made, or, at its option, to retain them and declare the debt due, and proceed to foreclose its mortgage for both principal and interest. It elected to pursue the latter course, and it must now abide its election.

Concerning the interest which has accrued since the decree of foreclosure, it is clear that resort can not be had to the contract in question for its recovery. By the option which the mortgage company was authorized to exercise, according to the terms of the mortgage, the whole debt became due. The decree of foreclosure merged the entire contract with the Journal Company, as well in respect to interest coupons matured, as in respect to those not matured, into the judgment and decree. The contract of loan was then terminated, and the liability of the borrower fixed. Thenceforth the mortgagor's liability was measured by the decree, and the interest coupons as well as the entire contract were *functus officio*. The liability of the Journal Company, as also that of the agents, was then at an end, so far as subsequently maturing interest coupons were concerned. The case is not distinguishable in principle from *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244. See, also, *Melick* v. *Knox*, 44 N. Y. 676; *Hunt* v. *Roberts*, 45 N. Y. 691.

The fourteenth instruction given by the court is the subject of argument. In this instruction the court stated the issues relating to the subject of the interest coupons above referred to, and also gave the law in charge to the jury in respect to the interest and the respective rights of the parties upon that subject, in consonance with what has already preceded. In so far as the issues were—evidently by inadvertence—inaccurately stated by the court in this instruction, the inaccuracy was immaterial, and could have in no wise affected

the principles laid down. The instruction, however, embraced another subject of which it is proper that something should be said in this connection. The claim was made both in the pleading and in the evidence, that Mr. Henderson, acting as the attorney of the mortgage company in foreclosing the mortgage against the Journal Company, foreclosed for the principal and interest in violation of instructions, and without the knowledge of his client and principal, when he was instructed to foreclose only for the matured interest, and that he had thereby made himself liable for the interest.

Pertinent to this feature of the case, the court instructed the jury, in substance, that however that might be, since the decree of foreclosure had been given, and the bond, mortgage and coupons had all been merged in the decree, even if Henderson had acted in bad faith, and thereby made himself liable to his client for any damage which may have accrued to it, the issues were not so formed in this case as to authorize an assessment of damages on that account. The court told the jury, moreover, that if Mr. Henderson acted in good faith, and with an honest purpose to protect the interests of his client, and the mortgage company, with full knowledge of what had been done, ratified the decree and the receivership established thereunder, and accepted and enjoyed the benefits procured under the decree, it could not then assert that the acts of Henderson in procuring the decree were unauthorized, so as to hold him liable on his contract for the payment of interest in this action. Without enlarging, it is sufficient to say, we approve the instruction as a correct statement of the law applicable to the subject-matter under consideration. If we should adopt the appellant's view, and assume that Mr. Henderson had not acted in good faith, it would by no means follow that it could treat the decree into which the securities have all been merged as subsisting for its benefit, and at the same time proceed against him under the contract for the interest which is merged in the decree. If the appellee is liable for misconduct as the appellant's attorney, that liability

is altogether independent of, and without any relation to, the written contract of agency. The question at this point, is not as to the effect of negligence or misconduct in attending to his client's business, upon the right of the attorney to recover for services, nor as to his liability to the client for any resulting injury, but whether or not his alleged bad faith continued his liability under the contract for the interest coupons, after they were merged in a decree, the benefits of which his clients adopted. This is all that need be said in respect to the claim of the appellant that its agent remains liable on his contract for interest.

One of the items included in the plaintiff's bill of particulars, upon which his complaint was founded, was a charge for services in foreclosing the mortgage against the Journal Company. It is strenuously urged that the evidence shows that Mr. Henderson declared a forfeiture of the credit to the Journal Company, and foreclosed the mortgage for the whole amount, in violation of the instructions of the mortgage company, and that his conduct in relation to the whole matter was such that he was not entitled to compensation for his services in the foreclosure proceeding. In respect to this subject there was a mass of evidence given to sustain the positions assumed by the litigants respectively. Relevant to that subject, the court instructed the jury, in substance, that, notwithstanding the foreclosure suit in question may have been originally commenced under instructions from the mortgage company to proceed only for the matured interest coupons, yet if, after the proceeding was so commenced, such a condition of affairs ensued as that during the litigation that followed Mr. Henderson, in good faith, believed it to be for the protection and advancement of the interests of the mortgage company, that he should give notice of a forfeiture, and foreclose the mortgage for both principal and interest, and that he did so foreclose it, and within a reasonable time thereafter notified his client of what

had been done, explaining to them the reasons and apparent necessity for so doing, and the company did not repudiate, or make any attempt to set aside the decree, but accepted the benefits thereof, and adopted the receivership established thereunder, then such acceptance was a ratification of what had been done ; and that under such circumstances Mr. Henderson was entitled to reasonable compensation for his services.

The jury were further instructed that if the appellee had violated his instructions in making an election for the company, and failed to give the company notice of the course pursued, and if the election made and the proceedings taken had not been ratified by the company, then nothing should be allowed for his services in the foreclosure proceeding. These instructions put the question in issue between the parties fairly to the jury.

It is impossible that parties or attorneys should foresee in advance every emergency which may arise during the progress of a litigation, and it is not every mistake or misapprehension that will render an attorney liable, or forfeit his right to compensation. If the attorney exercises reasonable and ordinary skill and diligence, and proceeds in good faith with an honest purpose to subserve the best interest of his client, the latter may not accept the fruits of his labor without objection, and then deny and refuse to make compensation.

We are unable to ascertain from the record whether or not the jury allowed anything in their verdict, which was for a gross sum, for foreclosing the Journal Company mortgage. As we discover no error of law relating to that subject, and as it is impossible to tell which way the jury found the facts on that issue, we do not examine the evidence or consider the point further.

The mortgage company claimed that there had been a settlement and accounting between it and Mr. Henderson, prior to the commencement of this suit, and that it was

ascertained at that settlement that Henderson and Jameson were indebted, on account of interest guarantees on loans made for the company, under the contract of agency, to the amount of $11,650.66. Henderson executed six notes covering this amount, payable to the company. The plaintiff alleged that these notes, which were pleaded as a set-off to his claim, had each and all been executed without consideration.

The evidence tended to show that the various sums which entered into the settlement and made up the amount for which the notes were executed, were, with but one exception, for interest claimed to be due from the agents of the mortgage company, under their agency contract.

There was also evidence tending to prove that the interest thus claimed had all been realized by the mortgage company, by being embraced in various decrees of foreclosure, upon which the company had in each instance bid in the mortgaged property for the full amount of the decree. The claim of the company seemed to be, that notwithstanding the interest had been so included in the several decrees, which had been fully satisfied by sales of property, yet the circumstances were such that the agents remained liable, under their contract, for the interest so included, nevertheless. After being appropriately instructed by the court in reference to this feature of the case, the jury, by their verdict, affirmed the position of the plaintiff below, viz., that the notes had been executed without consideration.

The appellant, however, assumed the law to be, and so asked the court to give it in charge to the jury, that if there was a controversy between the parties respecting the liability of the plaintiff to pay the claims for interest, and the company, in good faith, believed that its agents were indebted to it upon the claim preferred, and the plaintiff, in order to settle the dispute and avoid litigation, executed the notes in question, then, whether the company had an actual claim or real right was immaterial, since, in that event,

the compromise of the controversy was a sufficient consideration for the notes.

The charges requested proceed upon the idea that no matter how groundless the claim of the mortgage company may have been, so that it was made in good faith, under the belief that the plaintiff was liable, if as a result of making the claim the notes were executed in order to avoid litigation, they were upon a sufficient consideration. It must be conceded that decisions from courts of great respectability and authority are cited, which seem to sustain the theory of appellant in all its breadth.

The rulings of this and other courts do not, however, sustain the view urged on appellant's behalf. In the first place, in order that a compromise may constitute a sufficient consideration to support an executory contract, the claim compromised must have been at least "doubtful," and there must have been some colorable ground of dispute, and some legal or equitable foundation for the claim. *Harris* v. *Cassady*, 107 Ind. 158.

If, for instance, a question is made concerning the liability of a party under a written contract, upon the face of which the rights of the parties are perfectly plain, it has been held that a compromise of such a dispute is without consideration. *Coy* v. *Stucker*, 31 Ind. 161. So, where the maker of a note secured by mortgage, had paid the note in full, but the holder, claiming that it had not all been paid, refused to surrender the note and release the mortgage, until another note was executed for the amount claimed to be due, it was said " that there must be at least a colorable ground of a claim, in law or in fact, to sustain an executory contract, given as a compromise." *Smith* v. *Boruff*, 75 Ind. 412.

In the recent case of *Warey* v. *Forst*, 102 Ind. 205, the facts were that a claim was made, that a husband had fraudulently conveyed his real estate to his wife. A creditor of the husband believed that he had a right to set the conveyance aside, and subject the land to the payment of his

The United States Mortgage Company *v.* Henderson *et al.*

debt. The wife, for the purpose of avoiding threatened litigation, executed a note and mortgage upon the land. Commenting upon the facts, the court said: "The finding does not show the compromise of any actually existing liability; it states only the belief of the defendant that he had a claim, without any fact upon which such belief is founded; it is not found that there was any valid claim against the plaintiff. * * * There is no fact found upon which even a doubtful claim could arise in favor of the defendant against the plaintiff. A threatened litigation, founded merely on the defendant's belief, without any fact to support the belief, amounts to nothing, and the purpose to avoid such a litigation was no consideration for the plaintiff's promises." *Wade* v. *Simeon*, 2 C. B. 548; *Edwards* v. *Baugh*, 11 Mees. & W. 641; *Spahr* v. *Hollingshead*, 8 Blackf. 415.

In the language of the court in *Jarvis* v. *Sutton*, 3 Ind. 289, "It is true a compromise of doubtful claims may be sufficient to found a consideration upon, but in such cases there must be a surrender of some legal benefit which the other party might have retained. * * * A promise to give something for the compromise of a claim, about which there is merely a dispute and controversy, and for which there is no legal foundation whatever, is not sufficient to sustain a suit at law."

In order that a compromise may constitute a sufficient consideration for the enforcement of an executory contract, there must have been an actual *bona fide* claim, founded upon a colorable right, about which there was room for honest doubt and actual dispute.

Upon the plaintiff's theory the interest coupons were in effect paid by having been satisfied by the purchase of property. In that event there would have been no color or foundation for a dispute or claim. The instructions requested ignored the necessity for even color or foundation for the claim. Because the instructions omit these essentials they were properly refused.

. Other instructions. given by the court, and some which were requested by the appellant and refused, are the subjects of discussion in the briefs.    Most of these relate to questions which have already been considered in connection with the pleadings and other matters which have preceded.    While we have carefully considered the questions made, it would involve a useless repetition to state them all separately, and the reasons upon which we conclude that no error intervened in respect to giving or refusing instructions.

It became a subject of controversy whether, under the contract of agency, Henderson and Jameson had the right to charge the mortgage company for the services for which compensation was claimed, the items of which were comprised by the bill of particulars and the proof in the case.

As has been seen, the agency comprehended by the contract was to make loans of money on bonds and mortgages, and to collect money to become payable on such loans.    The contract also provided that the company should not be liable for any charges, disbursements or commissions to their agents " for their services in said agency."

The court put the case to the jury upon the theory that, under the contract, the mortgage company had no right to require the services of Henderson and Jameson, or either of them, without compensation, as to any or either of the following matters :

*First.* Legal services in foreclosing mortgages or collecting moneys for the company by legal proceedings and actions at law.

*Second.* Looking after repairs to, and caring for, properties bought in by the company upon foreclosure of its mortgages.

*Third.* Renting and collecting rents of properties bought in by the company upon foreclosure of its mortgages.

*Fourth.* Superintending repairs and improvements to, and taking general oversight of, properties in the hands of re-

The United States Mortgage Company *v.* Henderson *et al.*

ceivers appointed by the courts in cases brought to fore-close mortgages executed to the company to secure loans made by its agents.

*Fifth.* Looking after the payment of taxes, and the keeping up of insurance, upon properties bought in by the company, upon foreclosure of its mortgages.

*Sixth.* Looking after the payment of taxes, and keeping up the insurance, upon properties mortgaged to the company to secure loans.

The court instructed the jury that for all services of the character above specified, performed by the agents, or either of them, at the instance and request of the company, the latter became liable to pay a just and fair compensation.

These instructions are covered in principle by what was said in *Union, etc., Ins. Co.* v. *Buchanan,* 100 Ind. 63–73: " The fact that an attorney is employed as an agent to negotiate loans does not preclude him from rendering professional services, if requested by his principal. Loaning money is one thing; giving advice in matters of law, and conducting suits, are quite different things." So it may be said here, the services enumerated above are services quite different from those comprised by the contract of agency, which related exclusively to loaning money on bonds and mortgages, and collecting moneys payable on loans made. We have discovered no error of law in the record.

In respect to the value of the services, and the diligence exercised by the agents in attending to the company's affairs, there was apparently sharp antagonism. The great length of time occupied with the hearing, and the volumes of evidence taken, attest the care and minuteness of inquiry into all the details of the whole business, which characterized the investigation. A careful consideration of all the questions, which have been very elaborately and carefully presented, fails to disclose any error of law committed by the court; and, while we may say the amount of the recovery ($12,-506.72) seems large, we are unable to see that a different

result would be reached if a new trial were ordered and the same evidence submitted to a new jury.

The judgment is, therefore, affirmed, with costs.

ELLIOTT, C. J., did not participate in the decision of this case.

Filed May 12, 1887.