## HELENA PETERSON AND OTHERS v. NELS HEGNA.[1]

### February 29, 1924.

### No. 23,702.

Action on compromised claims barred by statute—doctrine of family settlements limited.

Plaintiffs, stepchildren of defendant, recovered verdicts of $4,500 against him upon an alleged compromise agreement to pay that sum in settlement of certain claims they asserted on account of their father's estate and their mother's dower interest. It is *held*:

(1) That part of the charge to which the main objection of appellant is directed is substantially correct insofar as it goes in defining doubtful or disputed claims that will support a compromise.

(2) An utterly baseless claim cannot support an agreement to compromise it.

(3) In view of the evidence and the charge defendant was entitled to the requested instruction that the asserted claims were barred by the statute of limitations.

(4) The doctrine that family settlements are favored in law should not be extended to personal claims growing out of torts or money demands between members of a family, but to cases involving the disposition of property in which the members of the family are interested.

Action in the district court for Mower county by the heirs at law of Genelia Berg, deceased, to recover $4,500. The case was tried before Peterson, J., who when plaintiff rested denied defendant's motion that the action be dismissed and at the close of the testimony denied his motion for a directed verdict, and a jury which returned a verdict for $5,107.50. From an order denying his motion

[1]Reported in 197 N. W. 484.

for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Catherwood & Nicholsen*, for appellant.

*F. G. Sasse* and *R. A. Dunnette*, for respondents.

HOLT, J.

Plaintiffs sued and recovered upon an oral promise made by defendant to pay them $4,500 as a compromise of claims they asserted against him. Defendant appeals from the order denying his motion in the alternative for judgment or a new trial.

In 1865, Ole Lewis died intestate, the owner of 215 acres of land and less than $500 worth of personal property. Of the land 125 acres was in Mower county and 90 in Dodge county. He left a widow about 30 years old and three daughters, the oldest 7 years of age. Defendant married the widow in 1867. The widow was appointed administratrix of the estate and guardian of the children. In 1869 the probate court granted the guardian a license to sell the interests of the wards in the lands mentioned and the same were sold at public vendue to defendant for $2,460. When the children came of age the guardian accounted, and they received the proceeds of the sale, then amounting to over $5,000. Their mother, defendant's wife, died in 1913. With her defendant had 7 children living. One of the three stepdaughters died some 19 years ago, leaving a husband and 7 children, who are parties plaintiff in addition to the two stepdaughters now living.

The evidence shows that some years after the death of the mother his stepchildren began to assert some claims against him. At first they were made to his children, but finally to him personally. The evidence does not disclose upon what act of defendant plaintiffs based their claims; but the items hinted at are: That there was no final decree in the estate of Ole Lewis disposing of the small personal property; that defendant's wife had an unassigned dower interest in the 120 acre farm in Mower county from which she was entitled to the rental value from defendant, except as barred by the statute of limitations and that some $400 or $500 had come

from the estate of a grandfather of Ole Lewis' children, and also that a government pension during the minority of the children had been received. These pretended claims were each and all barred for more than 30 years, unless that of the alleged right to recover the value of the use of the so-called dower interest, and that accrued more than 6 years prior to the promise on which this action is predicated.

It must be admitted that it is difficult to find anything upon which to base any sort of a demand against defendant. Under the statute (G. S. 1866, c. 48, § 12), the widow of Ole Lewis could occupy the lands with the heirs without the dower being admeasured or assigned to her. She did so occupy the Mower county land jointly with defendant, the grantee of the heirs, up to her death. Under such circumstances, it is not conceivable that she could assert a claim for use and occupation. As to the question the court charged correctly, we think, that the mother, the guardian, was presumed to have collected that and not defendant. And as to the estate of plaintiffs' grandfather there is nothing definite except defendant's admission that his three stepdaughters had something less than $500 coming therefrom some 35 years ago, but that he took no steps to collect it, considering that other heirs were in more need thereof. He was under no obligation to enforce the rights of his stepchildren. He was not their guardian.

Plaintiffs' evidence also suggests that defendant obtained a quitclaim deed of the 120 acres in Mower county from his stepdaughters in 1899 by fraudulently representing that it covered only the 5-acre wood lot. There is no substance to this charge. At that time, nearly 30 years after the sale, they stood little chance of attacking its validity upon any ground. They had received and enjoyed the full proceeds of the sale. Insofar as this oral compromise embraces any claim for the delinquencies of defendant's wife as guardian or as administratrix it must fail under the statute of frauds. So the only basis in law or morals that might ever have existed for the assertion of a claim by plaintiffs against defendant must be made to spring from the dower interest in the 120-acre-Mower-county land. And on the part of defendant the only consideration for his

promise is to be sought in his desire to secure the good will of plaintiffs toward himself and his children, for he testified that, although he knew plaintiffs had nothing coming from him, nevertheless, he desired to give them a present to the end that they would make no claim against his estate or trouble his heirs, and so that he might die in peace.. He admitted in his testimony that on October 22, 1921, he orally promised to pay plaintiffs $4,500 two days thereafter. This occurred in the office of the probate court at Austin.

There are many errors assigned upon the charge and the refusal to give requested instructions; also upon the denial of judgment notwithstanding.

One of the main contentions on this appeal centers upon the correctness of this part of the charge: "To find that there was a disputed or doubtful claim between the parties, it is sufficient if you find that the parties concerned in it thought at the time that there was a question between them. It is not even necessary that the question in dispute should be necessarily doubtful if the parties concerned therein bona fide considered it so." This is substantially the language in Demars v. Musser-Sauntry L. L. & Mnfg. Co. 37 Minn. 418, 35 N. W. 1, approved in Hansen v. Gaar Scott & Co. 63 Minn. 94, 65 N. W. 254 and Sunset Orchard Land Co. v. Sherman Nursery Co. 121 Minn. 5, 140 N. W. 112. Elliott Contracts, § 237, states: "It would seem, however, that the good faith of the parties to the compromise instead of color of right has been finally adopted in England and in most of the states of this country as the test by which to determine the validity of a compromise. The rule applicable to all cases may therefore be stated thus,—the compromise of a claim which is asserted in good faith and of the validity of which the parties at the time entertain a doubt, and about which there is a bona fide controversy, is a valuable consideration and will support a promise or contract." Similar conclusions are stated in 5 R. C. L. pp. 881-883, and 12 C. J. §§ 15-20 on p. 322 et seq. Many authorities are collected in note to Armijo v. Henry, 25 L. R. A. (N. S.) 275. See also Belt v. Lazenby, 126 Ga. 767, 56 S. E. 81; Adams v. Crown Coal & Tow Co. 198 Ill. 445, 65 N. W. 97; Bement v. May, 135 Ind. 664, 34 N. E. 327, 35 N. E. 387; Urdanger v. Frayer,

183 Iowa, 39, 166 N. W. 693; Melcher v. Ins. Co. 97 Me. 512, 55 Atl. 411; Blount v. Wheeler, 199 Mass. 330, 85 N. E. 477, 27 L. R. A. (N. S.) 1036; Pitkin v. Noyes, 48 N. H. 294, 97 Am. Dec. 615, 2 Am. Rep. 218; Worcester Loom Co. v. Heald, 78 N. J. Law, 172, 72 Atl. 421; Wahl v. Barnum, 116 N. Y. 87, 22 N. E. 280, 5 L. R. A. 623; Bailey v. Philadelphia, 167 Pa. St. 569, 31 Atl. 925, 46 Am. St.. 691; Bellows v. Sowles, 55 Vt. 391, 45 Am. Rep. 621; Kercheval v. Doty, 31 Wis. 476; Galusha v. Sherman, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417. We think therefore the instruction right as far as it went.

The jury were instructed with some particularity not to concern themselves. with the proceedings in the probate court relative to Ole Lewis' estate, or the guardianship of. his children, or as to the deeds received in evidence—that all this was admitted simply as bearing on. the good faith of the parties and the credibility of the witnesses, and that the merit of plaintiffs' claims was not to be considered. No attention was called to the great length of time the claims, if any there were, had been allowed to slumber. Nor were the jury told that wholly baseless claims could not support an executory compromise. In view of this character of the charge we think it was error to refuse this requested instruction: "You are instructed that whatever lawful claim or claims the plaintiffs may have had against the defendant, Nels Hegna, such claims were at the time of the conference in the probate court at Austin outlawed and void under the statute of limitations." Defendant was entitled to have the jury informed that the claims were legally barred. Being outlawed would it be likely that the parties could in good faith compromise the same?

Defendant assigns error on the refusal to grant judgment non obstante. It is asserted that since the claims were barred they could not serve as a consideration for a compromise. Anderson v. Nystrom, 103 Minn. 168, 114 N. W. 742, 13 L. R. A. (N. S.) 1114, 123 Am. St. 320, 14 Ann. Cas. 54, is cited where it was said of certain outlawed notes: "Defendants were neither legally nor morally bound to pay them." But the notes there were not the obligations of defendants but of their deceased father, whose estate was insolvent. In that

situation it was held the outlawed claims asserted as a basis for the alleged compromise were not recognized in law as a valuable consideration. The situation was similar in Taylor v. Weeks, 129 Mich. 233, 236. Here the claims at least, in part, were against defendant personally. As to such claims, though barred, there is a moral obligation which is a good consideration for a promise, if in legal form, to pay them. Belt v. Lazenby, supra. The claims asserted against defendant personally are in tort, and a promise to pay or a compromise of them does not seem to come within the statute of frauds.

It is also urged that there should have been judgment non obstante because the claims asserted against defendant were wholly without basis and frivolous. Notwithstanding the modern tendency to stress the good faith of the parties to a compromise to the exclusion of every other inquiry, there still exists the rule that an utterly unfounded claim will not sustain a compromise thereof. A compromise or promise to pay money is a contract and must be based upon a legal consideration. The authorities are unanimous that a wholly baseless claim cannot support an executory compromise agreement. Wharton, Contracts, § 533, says: "A promise to compromise a claim utterly unfounded will not be regarded as a valuable consideration" for a compromise. In Ware, Murphy & Co. v. Morgan & Duncan, 67 Ala. 461, 469, we find: "There can be no countenance or encouragement given to the assertion of claims parties know to be unfounded, or have no good reason to believe well founded." See also Mulholland v. Martlett, 74 Ill. 58; United States Mortgage Co. v. Henderson, 111 Ind. 24, 12 N. E. 88.

This principle was recognized in Neibles v. Minneapolis & St. Louis Ry. Co. 37 Minn. 151, 33 N. W. 332, where it was said that a valid contract could be made to compromise a claim if it was asserted in good faith, "and upon reasonable grounds inducing the belief that it was enforceable." That was approved and applied in Montgomery v. Grenier, 117 Minn. 416, 136 N. W. 9. So also in Kies v. Searles, 146 Minn. 359, 178 N. W. 811, it was said: "If the assertion of a claim is in good faith and upon reasonable grounds, and the parties interested settle their controversy by mutual concessions, there is a consideration for the compromise." It must be

admitted that, in the examination of numerous cases involving compromises of doubtful claims, none has come to our attention so lacking in reasonable grounds for a belief that it was enforceable as the one asserted by plaintiffs herein. But the good faith and reasonable grounds for belief are, as a rule, jury questions, and we conclude, on this record, that they should be determined by a jury under proper instructions.

Plaintiffs contend that this is a family settlement of a dispute— always regarded favorably in law. Cole v. Cole, 292 Ill. 154, 126 N. E. 752; Adams v. Adams, 70 Iowa, 253, 30 N. W. 795; Chaffee v. Chaffee, 197 Mich. 133, 163 N. W. 879. But a majority of the court are of the opinion that this doctrine should not be extended to mere demands for money, whether arising from tort or contract, made by one against other members of a family, but should be confined to cases involving a family fund or property in existence which *must be divided*, amicably if possible, but if not, then by litigation. Bouvier defines a family settlement as "an agreement made between a father and his son or children, or between brothers, to dispose of property in a different manner to that which would otherwise take place." The above cited cases related to property in existence for disposition between relatives.

The Chief Justice and the writer think the desire of a member of a family to avoid litigation and bad feeling between other members is a sufficient consideration to support his promise to compromise a claim, whether such claim relates to the disposition of property or to a mere money demand. The real consideration is the desire for peace and harmony in the family and its good reputation.

For the error in the refusal to give the requested instruction the order denying a new trial is reversed.