# C. GOREZKI AND ANOTHER v. IDEAL CREAMERY COMPANY.[1]

March 28, 1930.

No. 27,735.

*Lewis E. Jones,* for appellants
*Murphy & Johanson,* for respondent.

[1]Reported in 230 N. W. 128.

HOLT, J.

Plaintiffs appeal from the order denying a new trial. The action was brought to cancel a note of $500 and the mortgage securing the same which plaintiffs allege were obtained from them by means of wrongful representations and threats of defendant that plaintiff C. Gorezki, while in charge of its creamery, had bought stolen cream for which defendant was liable to the owners thereof; that said note and mortgage were without consideration; that said instruments were executed and delivered upon the understanding and agreement that they should be canceled and returned to plaintiffs if defendant was not required to pay for any stolen cream; that no one has ever demanded of defendant payment for stolen cream; that plaintiffs have requested defendant to return the note and satisfy the mortgage, but it has refused; and that defendant threatens to foreclose. Appropriate relief was asked.

The answer in addition to denials alleged that plaintiff C. Gorezki was short $1,400 in his accounts with defendant, and the note and mortgage mentioned were given and accepted in full settlement of the shortage, and that the mortgage was being foreclosed by advertisement.

The findings of the court were in substance that plaintiff C. Gorezki was short in his accounts with defendant more than $1,200, and that the note and mortgage were given and accepted in full settlement thereof; that the note though due has not been paid and defendant is entitled to foreclose the mortgage. Relief was denied plaintiffs and costs awarded defendant.

The outstanding and it may be said undisputed facts in the case are these: Defendant is a corporation operating a creamery at Wheaton in this state. It was in debt and in a run down condition when plaintiff C. Gorezki in 1916 took charge as buttermaker and manager under the direction and control of the officers and stockholders of the company. He ceased to be the buttermaker in 1924 but continued until March of 1927 taking in cream and running the creamery. In the spring of 1926 Gorezki devoted his time more to overlooking the buying and selling of poultry, a new sideline

then taken up by defendant. During his employment the business of defendant steadily prospered. Up to December, 1926, no officer or stockholder of defendant mistrusted the honesty of Gorezki. He had the confidence of all. At the time last mentioned, on a morning when the roads were so impassable that no delivery of cream could be made at the creamery, two empty cans bearing a number corresponding to a patron listed in company's records as August Kramer were found on the platform of the creamery. An investigation was made. Two other names of supposed patrons, H. Gronert and Carl Steinert, excited suspicion. Gorezki's explanation as to who these men were was unsatisfactory, and the directors' subsequent investigation led a majority of them to the conclusion that the names were fictitious and that the cream represented as having been delivered by these three patrons was never received though the company had paid out therefor, as the court finds, over $1,200 during the years 1924, 1925 and 1926. After several conferences by the board and members and officers thereof with Gorezki, defendant proposed to compromise and settle for $500. A committee of two members of the board, one of whom was a friend of Gorezki and who still takes his part, were appointed to negotiate a settlement. After one or two interviews the note and mortgage were executed and delivered, at which time there was delivered to plaintiffs this instrument executed by defendant:

"Wheaton, Minnesota, March 18th, 1927.

"For and in consideration of C. Gorezki and Katherine Gorezki, his wife, this day executing and delivering to the undersigned a real estate mortgage in the amount of five hundred dollars ($500.00) which is due on or before one year from date and a lien upon lots 1 and 2 in block three (3) of Annie Leaser First Addition of the village of Wheaton the undersigned hereby releases C. Gorezki from all claims of indebtedness due them to date with the exception of the payment of the above stated mortgage."

It is plain that plaintiffs' cause of action as pleaded is inconsistent with the instrument just quoted. On the face of the documents the transaction between the parties constituted a settlement

of a disputed claim or indebtedness. To overcome this plaintiffs sought to prove that the note and mortgage were made for purposes entirely foreign to what they and the release indicate. Had they succeeded in convincing the trial court that the note and mortgage were merely to indemnify in case anyone asserted a claim that defendant had received stolen cream, or to secure payment if defendant proved that Gorezki had received any of its money, then of course' plaintiffs' theory would be correct that defendant would have the burden to show that it had been compelled to pay for stolen cream or to prove the amount that Gorezki had appropriated of its funds. But the finding which really disposes of plaintiffs' chance to prevail is in substance that the note and mortgage were given and accepted in settlement of an asserted liability. And a reading of the whole record of nearly 1,200 pages, with an examination of the numerous checks and writings introduced as exhibits relating to Gronert, Kramer and Steinert, compels the statement that no other conclusion could be arrived at than the one that the note and mortgage were given and accepted as a settlement of the claim of defendant founded upon Gorezki's conduct in respect to Gronert, Kramer and Steinert.

It appears to us unreasonable that defendant should desire indemnity against claims of unknown owners of stolen cream. No one had ever asserted such a claim. Nor is it reasonable that defendant, believing that it had paid over $1,300 for cream not received, would propose or accept less than that amount if it was seeking security pending an investigation. If any ·can of cream entered on the books as having come from Gronert, Kramer or Steinert was a mere fiction or myth, the conclusion would be that all of like source would be the same. Again, it is not plausible that, after more than two months of investigation unproductive of any trace of an actual person who had delivered cream or been paid therefor under the name of Gronert, Kramer or Steinert, defendant should have negotiated for further time to investigate.

The evidence is convincing that after the two empty Kramer cans were found in December, 1926, defendant's officers had diligently pursued every means of inquiry which seemed to them available to

ascertain whether the purported patrons really existed. This included the false leads Gorezki furnished them. And Gorezki knew when the note and mortgage were given that defendant had exhausted the search. He admitted that all the proof it desired to abandon its claim (that the checks he had issued and paid to these men were for cream not received) was to produce the men or locate them. With that situation in mind the court could not well come to any other conclusion than the one arrived at, namely, that the note and mortgage were given and accepted in settlement of a claim made against Gorezki by defendant growing out of his payments of defendant's funds to the alleged Gronert, Kramer and Steinert.

It is not necessary in order correctly to dispose of this appeal to determine the accuracy of every finding. The exact amounts appropriated or the method pursued to avoid detection are unimportant. There can be no doubt that at the time the note and mortgage were given the majority of the board of directors of defendant were in good faith asserting a claim against Gorezki in the amount of more than $1,300 and that that claim was compromised and settled by the note and mortgage. It is well settled that a contract for the settlement or compromise of a claim which may be asserted in good faith and upon reasonable grounds for the belief is valid. Demars v. Musser-Sauntry L. L. & Mfg. Co. 37 Minn. 418, 35 N. W. 1; Peterson v. Hegna, 158 Minn. 289, 197 N. W. 484; Cairns v. Lewis, 169 Minn. 156, 210 N. W. 885. Neither pleading nor proof would support findings that the settlement was procured by fraud or duress. Nor is there ground to assail it for mistake.

Errors are assigned upon numerous rulings on the reception and exclusion of evidence. The action was tried to the court. The court was very liberal in the reception of evidence, and neither party was more favored than the other in that respect. Plaintiffs complain because after a director of defendant had been called for cross-examination by plaintiffs and had given testimony in support of plaintiffs' position defendant was, over objection, permitted to cross-examine him. It appeared that the director was friendly

towards Gorezki and had taken his part in the controversy, and under those circumstances we see no impropriety in bringing out the true situation. Plaintiffs called the director as their first witness. There can be no just claim made against a searching cross-examination of Gorezki concerning Gronert, Kramer or Steinert; for the existence or nonexistence of these persons gave rise to the controversy, and from its start in December, 1926, Gorezki knew that if he could produce these men or any one of them, and he was the only one who professed to have dealt with them, defendant would not have pressed for a settlement. An expert on handwriting was employed by defendant who gave the opinion that the checks made out to Gronert, Kramer and Steinert were indorsed in the handwriting of Gorezki. There were so many of these signatures that an error in letting the expert express an opinion as to one signature, claimed to exhibit evidence of having been tampered with, becomes unimportant.

There was introduced evidence as to the overrun of butter in the churnings, and plaintiffs sought to establish a customary overrun which would refute the claim that defendant did not actually receive the cream from Gronert, Kramer and Steinert for which its funds were paid. Complaint is made because more of that nature was not allowed and some was stricken that had been received. Evidently the court was satisfied, and so should anyone be who reads this record, that a very small amount of undertesting and underweighing will give margin enough for the abstraction in two or three years of the amount represented by the sum over which the dispute here arose. Most of the records of churnings were destroyed long before defendant suspected anything wrong. The court was right in not prolonging the trial with the reception of a whole lot of testimony which would lead to no conclusion of value. We have found no ruling or rulings excluding or receiving evidence which in our opinion would justify a reversal or would at all affect the conclusion that the note and mortgage were given in settlement of a claim asserted in good faith upon a substantial foundation.

If the question of homestead was of the slightest importance plaintiffs would have been entitled to a finding that the property

mortgaged was their homestead. But it was an immaterial allegation in the complaint, and the plaintiffs are not harmed by the general finding that the allegations of the complaint not specifically found true are untrue.

The order is affirmed.