No. 1,408.

WOOD, ADMINISTRATRIX, *v.* LINDLEY ET AL.

CONTRACT.—*Construction.—Ambiguous.—Circumstances of Parties.*— If the terms of a contract are doubtful or ambiguous, the circumstances and situation of the parties to it may be considered for the purpose of arriving at their intention.

SAME.—*Particular Words Followed by General Words.—Limitations of Rule.*—If a particular recital in an instrument be followed by general words, the latter will be qualified by the particular recital; but this rule is limited to those instances where it is plainly and irresistibly to be inferred that the person using the language could not have intended to use the words in the general sense they import.

SAME.—*Agreement to Assume All Indebtedness of Firm.—Schedule of Indebtedness.—Indebtedness Not Enumerated.*—A contract by a third individual to pay all the debts of a certain dissolved firm of two persons according to a schedule attached to the agreement, reciting the amount of such indebtedness, and containing an agreement to save one of the members of the firm from all liability on the firm's indebtedness, in consideration of the transfer of all the assets of the firm to such individual, and also stipulating that after a sale of enough of such assets to pay such indebtedness the remainder, if any, should be transferred, at the option of such individual, to the other member at its cost price, or he should pay such other member the cost price of the goods remaining, is sufficient to bind such individual to the payment of indebtedness of the firm not enumerated in such schedule, and of which he had no knowledge when the agreement was made.

From the Vanderburg Superior Court.

*J. S. Buchanan, C. Buchanan* and *S. R. Hornbrook,* for appellant.

*A. Gilchrist* and *C. A. DeBruler,* for appellees.

DAVIS, J.—It is substantially alleged in the complaint, among other things, that in 1889 Walter L. Sullivan and John P. Wood were doing business as partners at Mount Vernon, Indiana, in the merchandising business under the name and style of Sullivan & Wood; that said John P. Wood resided at the city of Evansville, and that

said Walter L. Sullivan resided at Mount Vernon, and that said Sullivan in person was in charge and control of the business of the firm; that said appellees were then creditors of said firm; that an agreement of dissolution was entered into between said Sullivan and Wood by the terms of which, with the approval of appellees, said Sullivan assumed and agreed to pay all the debts of the firm and to pay said Wood $1,000 for his interest in the firm; that said Sullivan afterwards continued said business in his own name and became indebted to said appellees for goods purchased on his individual account in the sum of $1,386.40, but wholly failed to comply with said contract made with Wood; that said Sullivan was then insolvent, and that said Wood instituted an action against him with the knowledge and advice of appellees for the appointment of a receiver to take charge of said goods and sell and dispose of the same, and to apply the proceeds to the payment of the debts of the firm of Sullivan & Wood; that the head salesman and confidential man then in the employ of appellees was appointed receiver by the court, who took possession of said stock of goods and made an inventory of the same, and that the assets of the said firm of Sullivan & Wood, which came into the hands of the receiver, amounted in the aggregate value to the sum of $8,434.75, and that thereupon a written agreement was entered into between said Lindley Bros. and Sullivan & Wood, by the terms of which said Lindley Bros. bought and acquired all of said firm assets of said Sullivan & Wood; that the indebtedness of said firm of Sullivan & Wood, as stated by said Sullivan, amounted to $4,235.31, including $1,-363.45 owing appellees by said firm; that in consideration of said transfer of said property to them, said appellees undertook and bound themselves, first, to pay all the debts of the firm of Sullivan & Wood as set

forth in exhibit C, aggregating the sum of $4,235.31; second, to secure and save harmless said Wood from any and all liabilities he might have incurred or been responsible for by reason of having been a member of the firm of Sullivan & Wood; third, that after the payment of said debts and liabilities of the firm of Sullivan & Wood, and after they should realize and pay to themselves the sum of $786.40 owing to them by Walter L. Sullivan, they should either resell the residue of the goods to Sullivan or pay him therefor; that said Sullivan & Wood were equal partners, and that the entire consideration received by said Wood for the sale of said assets was the promise of appellees to pay the debts of said firm as specified in said agreement and to secure and save harmless the said Wood from all debts and obligations for which he was responsible as a member of said firm; that said appellees converted all of said assets to their own use and paid only said indebtedness mentioned in exhibit C, to-wit: $4,235.31, and that they have wholly failed and refused to keep said John P. Wood harmless from the liabilities which he had incurred or on which he had become liable by reason of his having been a member of the firm of Sullivan & Wood; that at the time said contract was executed, the firm of Sullivan & Wood was indebted to other parties in the sum of $1,500, evidenced by three notes, of the existence of which notes and indebtedness said Wood was then ignorant; that, afterwards, suits were instituted against him on said notes, during the pendency of which he died, and judgments were afterward rendered thereon against his estate; that when said suits were instituted, notice thereof was given to appellees, and they were requested to pay and satisfy said debts and save said Wood harmless in pursuance of the provisions and stipulations contained in said agreement, but that they failed and refused, and have ever

since refused, to pay said debts, or any part thereof, and that said estate was compelled to and did pay said debts; that the only consideration paid by appellees for said assets of the value of $8,434.73 was said sum of $4,235.31, being the debts of said firm set out in exhibit C.

The agreement on which the action is founded reads as follows :

"This agreement, made this 3d day of June, 1889, by and between the firm of Sullivan & Wood, a firm composed of Walter L. Sullivan and John P. Wood and engaged in the dry goods business at Mt. Vernon, Ind., and J. F. Lindley and Hiram M. Lindley and J. F. Lindley, Jr., and engaged in the dry goods business at Evansville, witnesseth, that, whereas, a suit was brought on the — day of May, 1889, by John P. Wood against said Walter L. Sullivan in the Posey Circuit Court, for an accounting and the appointment of a receiver; and, whereas, an inventory has been taken of the stock of Sullivan & Wood, which aggregates in value the sum of six thousand one hundred and twenty-four dollars and one and one-half cents ($6,124.01½) and the fixtures at four hundred and twenty dollars ($420), making in all the sum of six thousand five hundred and forty-four dollars and one and one-half cents ($6,544.01½).

"A copy of said inventory is filed herewith, marked 'Exhibit A.' A list, also, of the accounts and notes due said firm is also filed herewith, and made a part hereof, aggregating the sum of one thousand seven hundred and forty-eight dollars and sixteen cents ($1,748.16), and made part hereof and marked 'Exhibit B.'

"Said stock, fixtures, accounts and notes, aggregating in all the sum of eight thousand two hundred and ninety-two dollars and seventeen cents ($8,292.17); whereas, the receiver in charge of said stock of accounts has collected and has on hand, in cash, one hundred and

forty-two dollars and fifty-six cents ($142.56); whereas,· it appearing that the firm of Sullivan & Wood are in- debted to divers persons in the sum of four thousand two hundred and thirty-five dollars and thirty-one cents ($4,235.31), an itemized statement of which is filed herewith, and made part hereof, marked 'Exhibit C.'

"And the said Sullivan is indebted to the firm of J. F. Lindley & Bros. in the sum of one thousand three hundred and eighty-six dollars and forty cents ($1,386.40).

"Now, therefore, the said firm of Sullivan & Wood and said Walter L. Sullivan sells, transfers and conveys all stock of goods, accounts, fixtures and notes herein and before specified as is set out in exhibits 'A' and 'B.'

"In consideration of which, the said J. F. Lindley & Bro. agree and bind themselves to pay all the debts of the firm of Sullivan & Wood, as set forth in exhibit 'C,' aggregating the sum of four thousand two hundred and thirty-five dollars and thirty-one cents ($4,235.31), to- gether with interest on the same in full.

"And they also agree and bind themselves to pay and save harmless the said John P. Wood for any liability he may incur or be responsible for by reason of having been a member of the firm of Sullivan & Wood.

"After the payment of the said debts of the firm of Sullivan & Wood, and they shall have paid to themselves seven hundred and eighty-six dollars and forty cents ($786.40), with the interest on the same, of the indi- vidual account owing them by said Walter L. Sullivan, said J. F. Lindley & Bro. shall have the option to resell and convey to said Walter L. Sullivan all stock remain- ing or on hand at its cost price, taking security for such balance as may then be owing them at the time.

"The said suit pending in the Posey Circuit Court be- tween said Sullivan & Wood, is to be dismissed, and the

said J. F. Lindley & Bro. agree to pay the expenses of the court and fees of the receiver and clerk in the store, and all differences between Sullivan & Wood, and all rights of action on bond or otherwise by reason of such suit is hereby settled.

"In the event that the said Lindley & Bro. shall exercise their option to resell, the said Sullivan, in addition to any sum he may then owe J. F. Lindley & Bro., shall only be compelled to pay the cost price of such goods remaining or as may have been added to the stock of J. F. Lindley & Bro., and if said Lindley & Bro. shall elect not to resell they shall pay said Sullivan the cost price of any goods remaining unsold which now belongs to the stock of Sullivan & Wood, after deducting all costs and expenses. The said Sullivan has a lease on the building now occupied by the goods herein sold. And the said J. F. Lindley & Bro. shall have the right to occupy the store room as long as they may desire at fifty-four dollars and fifteen cents per month.

[Signed]     "WALTER L. SULLIVAN,

"JOHN P. WOOD,

"J. F. LINDLEY,

"HIRAM M. LINDLEY,

"J. F. LINDLEY, JR."

It appears from this agreement in the light of the surrounding facts and circumstances alleged in the complaint, that the firm assets of Sullivan & Wood, then in the possession of the receiver appointed by the court amounted in value to $8,292.17; that the firm indebtedness, specified in schedule C, amounted to $4,235.31, and that there was other firm indebtedness contracted by Sullivan, of which Wood then had no knowledge, amounting to $1,500; that the assets were in the hands of the receiver for the purpose of being converted into money for the payment of the firm indebtedness; that on account of the

insolvency of Sullivan, Wood was interested in securing the payment of the firm indebtedness out of the assets in the hands of the receiver; that for the same reason, appellees were interested in securing the individual debt owing them by Sullivan out of the excess of the assets after the payment of the firm indebtedness; that the assets in value exceeded the liabilities of the firm, including the $1,500, and also including the individual debt owing by Sullivan to appellees.

The appellees answered the complaint as follows:

"For answer to the complaint herein the defendants say that before the bringing of this action they paid in full all the debts of Sullivan & Wood, which are set out and mentioned in schedule C of the contract, which is filed with the amended complaint herein, and which debts amounted in the aggregate, as shown in said schedule, to $4,235.31. And the defendants paid all the sums due from Sullivan & Wood on each and all of said debts, and have fully performed their contract to pay such debts, which is filed with the amended complaint. They further say that at the time of making the contract filed with the amended complaint and until a short time before the bringing of this action they had no knowledge, notice or information that said firm of Sullivan & Wood was indebted in any other sum or to pay any other person than the debts set out in said schedule C, and they executed said contract and carried out the same in the full belief that said schedule contained all the debts of said Sullivan & Wood. The defendants did not, by said contract or otherwise, ever assume or agree to pay any other debts of said Sullivan & Wood than those set out in said schedule C. Wherefore," etc.

The court overruled appellant's demurrer to the answer, and this ruling presents the first question for our consideration.

The position of counsel for appellant is that appellees, by their contract, undertook to do and perform three distinct and separate things; that these three agreements are between different parties upon distinct and different considerations; that the first agreement is between the Lindleys, of the one part, and Sullivan & Wood of the other part, and is as follows: "In consideration of which the said J. F. Lindley & Bro. agree and bind themselves to pay all the debts of the firm of Sullivan & Wood, as set forth in exhibit 'C,' aggregating the sum of four thousand two hundred and thirty-five dollars and thirty-one cents ($4,235.31) together with the interest on the same in full"; that the second specific agreement is between the Lindleys of the one part, and John P. Wood of the other part, and is as follows: "And they also agree and bind themselves to pay and save harmless the said John P. Wood for any liability he may incur or be responsible for by reason of having been a member of the firm of Sullivan & Wood"; that the third agreement is found in the latter part of the document and refers to the disposition of the old stock that may remain, and is between the Lindleys of the one part and Walter L. Sullivan of the other part.

The controversy arises as to the meaning of that part of the contract which is the undertaking by the Lindleys to pay and to save harmless John P. Wood from any liability he may incur or be responsible for by reason of having been a member of the firm of Sullivan & Wood. The contention of counsel for appellant is that this agreement with Wood alone is distinct from, and in addition to, the agreement which immediately precedes it, and that by this agreement appellees agree to do something more and something in addition to what they had before undertaken.

Counsel for appellees say:   "The theory of appellees

is that Lindleys bound themselves to pay only such debts of Sullivan & Wood as are set out in that schedule; that after paying those debts and only those debts and their own debt from Sullivan, the explicit terms of the contract compelled them to return all goods not needed for those specific payments to Sullivan, or in case they did not return them they were to pay to Sullivan, not to Wood, and not Sullivan & Wood, but Sullivan, and that they are compelled, by the terms of the writing, to account solely for such goods to Sullivan.   *   *   *   The particular recital in the writing is the schedule of the debts.   The 'general words' is the provision for indemnifying Wood. That general language is qualified, restrained, limited by the particular recital.''

The rule of interpretation found in Bishop Contracts, section 384, is as follows:   ''Every clause and even every word should, when possible, have assigned to it some meaning.   It is not allowable to presume, or to concede when avoidable, that the parties in a solemn transaction have employed language idly.''   Pollock Contracts, 438.

The surrounding circumstances and the situation of the parties when the contract was made, when its terms are of doubtful or ambiguous meaning, may be considered for the purpose of arriving at the true intention. *Indianapolis Cabinet Co.* v. *Herrman,* 7 Ind. App. 462; *Reissner* v. *Oxley,* 80 Ind. 580, 584.

One of the rules of construction is that in any writing ''general words shall be restrained into the fitness of the matter and the persons,'' and ''when there is a particular recital in a deed and general words follow the general words shall be qualified by the particular recital.'' *Burns* v. *Singer Manufacturing Co.,* 87 Ind. 541 (548).

The application of this rule is limited to cases where ''from other covenants in the same deed it is plainly

and irresistibly to be inferred that the party could not have intended to use the words in the general sense which they import." Pollock Contracts, 436, 437.

The rule here applicable was correctly stated by Judge LOTZ in *Guaranty Savings and Loan Assn.* v. *Rutan,* 6 Ind. App. 83, 87.

"The primary object in the construction of contracts is to ascertain the intention of the contracting parties, at the moment their minds assented to the same proposition. In the absence of the averments of any extrinsic matter, courts are confined to the contract as written. *Evansville, etc., R. R. Co.* v. *Meeds,* 11 Ind. 273; *Beard* v. *Lofton,* 102 Ind. 408.

"But this rule does not preclude the court from considering the situation and relation of the contracting parties, the objects to be accomplished, and the motives they had in dealing with each other. He who interprets should, as nearly as possible, put himself in the position of the parties at the time the contract was executed. He should consider the subject-matter of the agreement and the knowledge of it which the parties possessed, the objects to be accomplished and the motives which they had in dealing with each other. The whole writing should be considered also in determining the meaning of any of its parts."

In this connection it should be remembered that many of the material allegations of the complaint are not denied by the answer. The situation and relation of the parties, the value of the stock, the amount of the indebtedness, the objects to be accomplished and the motives they had in dealing with each other are not controverted.

In considering the sufficiency of the answer, it may be conceded that neither the Lindleys nor Wood had any knowledge of the existence of the indebtedness in con-

troversy at the time the agreement was entered into. Appellees, however, did know that Wood resided at Evansville; that he had no active connection with the business, and that said Sullivan was in charge and control of the business of said firm; that Wood was an equal partner in the business, and that he was entitled to one-half of the surplus after the payment of the partnership indebtedness; that the partnership assets largely exceeded the indebtedness disclosed by Sullivan.

It is not claimed that there was any fraud, deception or concealment in any respect on the part of Wood, but it does appear that the opportunities of appellees to know the exact condition of the assets and liabilities of the firm, at the time the agreement was made, were at least equal to the opportunities of Wood.

The assets then in the hands of the receiver amounted in value to $8,434.75. The liabilities disclosed by Sullivan amounted to only $4,235.31. The motive of Wood in entering into an agreement by which he surrendered all interest in the firm was to secure his release from responsibility on account of the liabilities of the firm. The motive of appellees was to secure their individual account against Sullivan.

A reasonable construction of the contract, under the circumstances of this case, in the light of the authorities cited, would not, in our opinion, justify the court in the inference that the parties did not intend to use the general words referred to in the sense which they import. The import of the words used is that Wood was to be rid of all liabilities, for which he was responsible as a member of the firm of Sullivan & Wood, on condition that he would relinquish all his claims to the partnership assets in the hands of the receiver.

Appellees are only required to account to Sullivan for such excess as may remain after the payment of all the

indebtedness of the firm of Sullivan & Wood, including also Sullivan's individual debt, as provided in the agreement. In other words "said debts of the firm of Sullivan & Wood" refer not only to the debts mentioned in exhibit "C," but also includes any other debts for which Wood was responsible by reason of having been a member of the firm of Sullivan & Wood. After the payment of all of the indebtedness of Sullivan & Wood, and also $786.40 of the individual indebtedness of Sullivan, the appellees are required to account to Sullivan for the residue of the assets transferred to them by Sullivan & Wood, according to the terms of the agreement.

The judgment of the court below is reversed, with instructions to sustain the demurrer to the answer with leave to amend, and for further proceedings not inconsistent with this opinion.

Filed April 9, 1895.