## Pape *v.* Romy, Administrator.

[No. 1,903.    Filed Sept. 22, 1896.    Rehearing denied Dec. 17, 1896.]

CONTRACT.— *Conditional Sale.*— *Agent's Commission.*— Securing a purchaser of an interest in a patent right for $7,000 with the privilege, at the purchaser's option, of transferring such interest back to the owner within one year and receiving back the purchase money and interest thereon does not entitle the agent who negotiated the sale to a commission therefor, under an agreement that he was to

have as commission all which he might receive in excess of $5,000 for such interest, where the purchaser exercised the privilege so agreed upon and transferred the interest so purchased back to the owner and received the purchase price with interest.

From the Whitley Circuit Court. *Reversed.*

*T. E. Ellison* and *L. M. Ninde & Sons*, for appellant.

*A. A. Chapin* and *Henry Colerick*, for appellee.

DAVIS, C. J.—This was an action instituted by Wright against Pape to recover for services in negotiating purchase of patent right in 1881; in procuring purchasers for patent rights, and for commissions on sales of machines and expenses in 1882. *Pape* v. *Wright*, 116 Ind. 502.

After the reversal of the former judgment by the Supreme Court, appellant filed a fourth paragraph of answer averring that the matter sued for had been litigated and settled in a suit between the appellee and appellant and Fleming and Pfeiffer.

A general verdict was returned in favor of appellee for $1,250.00.

In answer to interrogatories, the jury find that the Fleming Manufacturing Company, composed of Charles Pape, William Fleming and Charles Pfeiffer, was formed January 1, 1883, and that they allow appellee in their general verdict $1,250.00 for services of said Wright as the employe and agent of the Fleming Manufacturing Company, and that suit was brought by Wright against Pape, Fleming and Pfeiffer for the value of his services in making sales of machines mentioned in the complaint in this action, in which he recovered judgment for $500.00, and that the judgment has been paid.

We have carefully read the entire record. The evidence is conflicting and unsatisfactory.

It is not clear that the jury allowed appellee anything for the alleged services rendered appellant by Wright in 1881 and 1882. The inference from the answer to the interrogatories is that the general verdict was based on the services rendered Fleming Manufacturing Company by Wright in 1883. Another inference is that he has recovered judgment for such services in another action. Whether these are the only inferences that might be drawn we will not determine. The theory of the first paragraph of the complaint is that the appellant agreed to pay said Wright a sum equal to all that he might sell the rights of appellant in and under certain letters patent, over and above $5,000.00. One item in this paragraph is that Wright in pursuance of said agreement procured one Charles Pfeiffer to purchase of the defendant for $7,000.00 a one-third interest in the right to manufacture and sell a leveler and grader under one of the letters.

In this connection Wright testified that in making the sale to Pfeiffer for appellant he said to him, "I will guarantee to you, you will make 50 per cent. of the money within one year," etc.    *    *    *    "I says to Pfeiffer he could have the privilege of withdrawing his money at 8 per cent. interest."

In pursuance of this conversation it was provided in the contract between Pfeiffer and appellant that appellant should, at the election of said Pfeiffer within one year, repurchase the interest sold to Pfeiffer at $7,000.00 with 8 per cent. interest.

It clearly appears, without controversy, that Pfeiffer, within one year, exercised the privilege of withdrawing his money, with interest, and that appellant repaid the money, with interest, to him.

The court instructed the jury that under such cir-

cumstances, Wright was entitled to recover for the services in making the sale to Pfeiffer.

The exercise of Pfeiffer's privilege was not caused by any act or connivance of appellant. At least, the instruction proceeds on no such theory. As to the item growing out of the sale to Pfeiffer, the theory of the appellee in the trial court was, as we understand it, that appellant became liable to Wright on the special contract that he should have a sum equal to all he could realize for the rights in and under the patents in excess of $5,000.00 without regard to the terms or conditions of such sale.

It was incumbent on said Wright, in our opinion, before he became entitled to recover for such services, to furnish a purchaser who was willing to pay appellant something in excess of $5,000.00 for his rights in and under such letters patent. Pfeiffer was not willing to purchase, except on condition, that at his option, his money and interest should be returned to him within one year. He was not willing to pay appellant $7,000.00, absolutely, for an interest in the patent without reservation. Appellee's theory was that Wright sold for appellant a one-third interest in one of the patents for $3,000.00, and a one-half interest therein to Pfeiffer for $7,000.00. If Wright's version of the transaction is true his own testimony shows that the sale to Pfeiffer was conditional. No theory has been suggested, on which the instruction relative to his rights to recover, on account of the sale to Pfeiffer, can be sustained. In our opinion, the testimony of Wright shows that the sale made to Pfeiffer was conditional in this, that it was upon the condition that if said Pfeiffer was not satisfied therewith at any time within one year, he was entitled to have the consideration of the sale, with interest thereon, paid back to him. This in effect gave him the right to rescind the

sale. When he exercised his privilege, and received from appellant the purchase money, with interest, the sale was rescinded and appellant had nothing by reason of the service of Wright. As to this transaction, Wright failed to produce a purchaser who was willing to buy. There was a string to the sale which in the end entirely defeated it. The conditions which defeated the sale were made by Wright. There was nothing about the transaction of which he could rightfully complain. If he had found one or more purchasers who were ready and willing to buy appellant's rights in and under the letters patent for a sum in the aggregate in excess of $5,000.00, Wright would have been entitled to recover such excess.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

## On Petition for Rehearing.

DAVIS, J.—On petition for rehearing, counsel for appellee contend that the contract between Pape and Pfeiffer, entered into on the 2d of January, 1893, was an absolute sale by Pape to Pfeiffer, with a contract on the part of Pape to repurchase of Pfeiffer at Pfeiffer's option of selling within one year. Therefore, counsel for appellee insist that the contract between Pape and Pfeiffer was a contract to repurchase, and that it was not a contract of a conditional sale or for a rescission of sale.

Wright testified that in the sale made by him for Pape to Pfeiffer, on December 30, 1882, it was agreed that Pfeiffer "could have the privilege of withdrawing his money," with interest at 8 per cent., at any time within the year.

When the agreement was reduced to writing between Pape and Pfeiffer it was expressly stipulated therein that "the purpose" of the contract, among

other things, was to enable Pfeiffer "to withdraw from said business within one year if he so desired."

Strictly speaking, the contract between Pape and Pfeiffer may not be a conditional sale, nor do its terms provide for a rescission of the contract, but it was a contract upon the condition that if said Pfeiffer was not satisfied with his investment therein at any time within one year, he had the right to withdraw his money with interest. The use of the words "repurchase" and "resale" in the contract between Pape and Pfeiffer did not, under the circumstances, change the nature of the transaction. In other words, whatever name may be given to the transaction, there was what may be termed a string to the sale made by Pape to Pfeiffer, through Wright, which in the end entirely defeated the sale. The condition which in the end defeated the sale, so that no benefit was derived therefrom by Pape, was made by Wright. It is clear that Wright failed to find a purchaser in accordance with the agreement between him and Pape, who was willing and able to pay Pape, unconditionally, a sum in excess of $5,000.00 for his interest in the letters patent.

In other words, the agreement made between Wright and Pfeiffer for the sale by Pape to Pfeiffer was that Pfeiffer should have the privilege of withdrawing the purchase price paid by him to Pape, with interest, within one year; and when the contract, founded upon the agreement, was reduced to writing between Pape and Pfeiffer, it was provided therein that *"this contract is made * * * to enable said Pfeiffer to withdraw from said business within one year if he so desires."* The written contract between Pape and Pfeiffer, when construed as an entirety, in the light of the situation, and relation of the contracting parties, the object to be accomplished, and the sur-

rounding circumstances, clearly shows that the sale negotiated by Wright for Pape to Pfeiffer was upon the condition that if said Pfeiffer was not satisfied therewith, at any time within one year, Pape was bound to return to Pfeiffer the money invested by him therein, with interest. *Wood, Admr.,* v. *Lindley,* 12 Ind. App. 258.

In other words, the "purpose" of the contract, as expressly written therein, was to protect Pfeiffer by giving him the option of withdrawing the money invested by him, with interest, within one year. The fact that in some places in the instrument the transaction is referred to as a sale of an interest in the letters patent by Pape to Pfeiffer, with an agreement to repurchase the same by Pape, at the option of Pfeiffer, does not destroy the effect of the clear and explicit language showing that Pfeiffer was only investing his money in the business on the express condition that, at his option, he might withdraw it at any time within one year.

It is conceded that in pursuance of the terms of the contract he did withdraw the money invested in the business, with interest, within one year.

It is also earnestly insisted by counsel for appellee that "the facts found by the jury establish the ultimate fact that the $1,250.00, allowed by the jury, was for other sales than the Pfeiffer sale."

The contention is, that the first item of indebtedness was $500.00 on account of the purchase made by Wright for Pape, for which Pape agreed to pay Wright $500. That the second item was for a sale made to William Fleming by Pape, without condition, for which Pape agreed to pay Wright $750.00 for a one-third interest in the Jonathan Fleming Road Leveler and Grader, and for commission upon a sale to William Fleming of a one-third interest in the Bauer Swing.

In other words, that the $500.00 was "on account of the purchase made by Wright from Jonathan Fleming, for Mr. Pape, of the original road grader patent." And that the $750.00 was for the sale of a one-third interest in the road grader patent to William Fleming "for Mr. Pape by Mr. Wright."

As to the first item, the jury expressly find, in answer to interrogatories, that $500.00 was for services of Wright in assisting Pape "in purchasing of Jonathan Fleming an interest in his road leveler patent." In answer to another interrogatory the jury expressly find that said $500.00 was for services rendered by Wright "as agent and employe of the Fleming Manufacturing Company." The jury also find that Pape paid Wright something over $300.00. It is not found, however, that such payment was made on the services in connection with the purchase of the Jonathan Fleming patent.

In answer to another interrogatory the jury find that Wright performed services "for the defendant in selling graders before January 1, 1883, and while defendant was acting for himself in such business."

The inference, therefore, is that the $300.00 was paid on services in selling graders before January 1, 1883. Another inference is, that as the Fleming Manufacturing Company, composed of Chas. Pape, William Fleming and Charles Pfeiffer, was not formed and did not begin business until January 1, 1883, the services by Wright as agent and employe of the Fleming Manufacturing Company were rendered after January 1, 1883.

As to the second item, the jury expressly find that "the firm of Charles Pape, William Fleming and Charles Pfeiffer was not formed and did not begin business until January 1, 1883," and that they allow plaintiff $750.00 "for services of said Wright as the

employe of the Fleming Manufacturing Company, composed of the defendants, William Fleming and Charles Pfeiffer."

It is clear, therefore, that the $750.00 was not allowed on account of the sale of the patent to William Fleming, prior to January 1, 1883, but that it was allowed for services rendered for William Fleming and his associates after January 1, 1883.

The jury also find that suit was brought "by Wright against Pape, Fleming and Pfeiffer for the value of services in making the sales of the machines spoken of in the complaint, and the expenses incurred in making such sales," in which action judgment was recovered for $500.00, and that the judgment was paid.

Whether any other services, except as hereinbefore indicated, were rendered by Wright for said firm, does not appear in the findings of the jury.

We cannot concur in the view of counsel that the answers of the jury to the interrogatories clearly and conclusively show that the appellee was entitled to recover $1,250.00 from appellant for services rendered in 1881 and 1882, in the purchase made of Jonathan Fleming and in the sale made to William Fleming, and, therefore, that the error for which the judgment of the trial court was reversed was harmless.

Petition for rehearing overruled.