## THOMAS ET AL. v. TROXEL.

[No. 3,383.   Filed February 22, 1901.]

APPEAL AND ERROR.—*Evidence.*—A verdict will not be disturbed on the evidence where there is some evidence on each material point. *pp. 322-325.*

CONTRACTS.—*Sales.*—*Parol Evidence.*—Where a written contract for the sale of a tile factory specifies but one tile mill and there were two tile mills on the premises at the time the contract was executed, both of which were claimed by the purchaser under the contract, parol evidence is admissible to show that one of the mills was not included in the contract of sale. *pp. 325-329.*

From the Clinton Circuit Court. *Affirmed.*

*T. H. Palmer, W. F. Palmer, T. H. Palmer, Jr.,* and *L. J. Curtis,* for appellants.

*O. E. Brumbaugh* and *J. Combs,* for appellee.

WILEY, J.—Appellee sued appellants for the wrongful conversion of one D. Ohio tile mill, combined with clay crusher, some tile dies, and other described property incident to and connected with such mill. The complaint avers that appellee was the owner of the property described; that appellants "wrongfully took and thereafter used, appropriated, and converted to their own use all of said property, and have ever since kept the same, and that said property was of the value of $400." Answer in denial, trial by jury, and a verdict for appellee.

Appellants moved for a new trial, which motion was overruled, and such ruling is assigned as error. Appellants based their motion for a new trial upon fifty reasons, the

first three of which question the sufficiency of the evidence to sustain the verdict. There is ample evidence in the record from which the jury could have found, and doubtless did find, the following facts: That appellee owned and operated a tile mill, or factory, which was located upon a two-acre tract of land owned by him. The tile mill property consisted of two tile mills, engine and boiler, tables, dies and attachments. One of the mills was known as the "Wallace Mill", and the other as the "Freese Mill", or, as generally designated, the "D. Ohio Mill." The Wallace mill was in use in the factory, and was in place and in condition to be operated. The D. Ohio mill had been purchased by appellee, but it would not work satisfactorily. He purchased it specially to make large tile. When he discovered it would not do the work for which he got it, he refused to accept it from the manufacturer. He set it aside, disconnected it from the factory, and notified the party from whom he purchased it of these facts, and told them he held it subject to their order. On account of these facts, neither appellee nor appellants, as shown by their conduct, acts, etc., considered the "D. Ohio Mill" as a part of the tile factory. March 27, 1893, appellee and appellants entered into a written contract by which appellee was to sell to appellants his tile factory and convey to them the real estate upon which it was situate. The contract provided that appellee was to sell to appellants the "tile factory * * * together with boiler, engine, mill, fixtures and appurtenances." This contract was consummated by a conveyance of the land to appellants and a formal transfer to them of the property described. Appellants went into possession of the property and commenced to operate the factory. At the time of the sale, appellee had not removed from the premises the "D. Ohio Mill". In August, 1894, appellants, over the protest and objections of appellee, took possession of the "D. Ohio Mill" and used it in making tile till they wore it out. It is in evidence that during the negotiations between the parties,

appellee informed appellants that he would not sell them the "D. Ohio Mill", and fully stated the reasons why he would not sell it.   He told them it would not do the work, that he had refused to pay for it, and that he expected to have a suit with the manufacturer over the controversy. That appellants told him they did not want to purchase that mill.   He told them about the "D. Ohio Mill" when they were on the grounds negotiating for the purchase of the factory.   Appellee at the time pointed out to appellants the "D. Ohio Mill," and told them that it was the one he would not sell them; and also pointed out to them the "Wallace Mill" as the one he was selling them.   It was shown that the "D. Ohio Mill" had a good clay crusher attached to it, and was on the ground, and could have been readily used. That after appellants made the purchase, instead of using the said clay crusher they purchased a new one, and when they purchased it said they did not have any.   After this appellants went to the factory to "clean" it up preparatory to commencing work, and appellee moved the "D. Ohio Mill" crusher out of their way, and also dragged the "D. Ohio Mill" out by the fence along the highway.   From the time appellants began to operate the factory, they used the "Wallace Mill" till they wore it out, then bought a new mill and used it until they broke it, and this they did without ever using or attempting to use the "D. Ohio Mill", or anything that belonged to it.   Then appellee granted them permission to use the "D. Ohio Mill" for a few days only. After operating the factory for about fifteen months, wearing out the "Wallace Mill", and breaking the new mill they had purchased, appellants asked permission of appellee to use the "D. Ohio Mill" for a short time, until they could get their repairs for the broken mill and to fill out a kiln of tile.   Soon after this appellee ordered them to quit using the mill, which they promised to do, and afterwards took the belt off and moved it away.   Afterwards, without appellee's permission, they put the mill back, and used it till they

wore it out. One of the appellants admitted that he had asked appellee for permission to use the mill. The value of the mill at the time it is alleged appellants converted it to their own use was between $400 and $500. As to the taking of the property by appellants, and its value, there is no conflict in the evidence. The sole question so far as the evidence is concerned is as to the ownership of the property. It is urged by appellant that the "D. Ohio Mill" was included in their contract of purchase, and that when said contract was consummated, the said property became theirs. Upon this point there is some conflict in the evidence, but there is ample evidence, taken in connection with the acts and conduct of the parties, from which the jury were authorized to find, and which they doubtless did find, by their verdict, that the "D. Ohio Mill" was the property of the appellee, that it was not included in the sale and purchase, and that appellants converted it to their own use. This being true, we cannot disturb the verdict upon the evidence.

The remaining forty-seven reasons assigned for a new trial are for alleged errors in giving, giving as modified, and in refusing to give certain instructions, and in admitting and refusing to admit certain evidence, and in refusing to strike out certain evidence. We do not think that many of the questions thus presented are of sufficient importance to require us to take them up and discuss and decide them separately. There is one question, however, which appellants' learned counsel have argued earnestly and at great length, which demands consideration, and the decision of which will clear up and largely eliminate other questions discussed. This question is a compound one, and may be stated as follows: (1) That the written contract between the parties included the "D. Ohio Mill"; and (2) that said mill was a fixture, and hence the title passed to them in the conveyance of the real estate. It is readily seen from this that appellants' theory is that it was error to admit any evidence explanatory of what particular property was covered

by the contract, on the ground that the contract was clear and plain, was not ambiguous, and hence extrinsic evidence to explain it was not admissible. When the written contract was made, there were two tile mills on the premises, and yet the contract only speaks of one "mill." Appellants knew, as the evidence shows, that there were two mills. They had been on the premises and examined the property. They were told by appellee that he would not sell them that mill, and yet when they came to draw up their contract, they only had it refer to one tile mill. One mill might be included in two, but two mills could not be included in one. Again, when appellants came to "clean" up the factory preparatory to commencing to operate it, appellee removed the "D. Ohio Mill", etc., and they made no objection. He also got permission of appellants to set the tables in one corner of the shed out of their way, and he took the dies, pulleys, and other attachments of the "D. Ohio Mill" to his own residence, entirely away from the factory. Appellants also put in a new clay crusher, instead of the one attached to the mill in dispute. They did not use the mill or exercise any control over it, for more than fifteen months, and then only by permission of appellee on their request. Under these facts we are clear that the "D. Ohio Mill" was not a part of the tile factory, within the meaning and language of the contract, and that the evidence thus complained of did not contradict the terms of the written instrument. True the contract did provide for the sale of the tile factory, but at the same time it specifically described what constituted such factory. We can not enlarge the terms of the contract, or read into it additional provisions. If we were permitted to do this, we could say that the word "mill" means two mills or more; that the words engine and boiler mean two or more engines and boilers. In fact when the contract was made, the "Wallace Mill" was in the factory and in use, and the "D. Ohio Mill" was not in use, and appellants knew it. The word factory is a general term, while the word mill is

a specific term. The rule of construction is, in such case, that the specific controls the general. See *Wood* v. *Lindley,* 12 Ind. App. 258, and authorities there cited.

So here we have a contract providing for the sale of a specific article, viz., a tile mill. As we have seen, it can only include one mill, for that is the specific description of the article. In carrying out the terms of the contract it may be equally applied to one of two articles of the same name, and as there were two "mills", we have a contract before us burdened with a latent ambiguity. So as to the particular mill that was embraced in the contract, and we are clear it only embraces one, there is a seeming latent ambiguity as to which particular mill was intended.

Mr. Greenleaf says: "As it is a leading rule, in regard to written instruments, that they are to be interpreted according to their subject-matter, it is obvious that parol or verbal testimony must be resorted to in order to ascertain the nature and qualities of the subject, to which the instrument refers." 1 Greenl. on Ev. (15th ed.) §286. In the same section it is also said: "So, where a house, or a mill, or a factory is conveyed *eo nomine*, and the question is as to what was part or parcel thereof, and so passed by the deed, parol evidence to this point is admitted." At section 288, the same author says: "It is only in this mode that parol evidence is admissible (as is sometimes, but not very accurately, said) to explain written instruments; namely, by showing the situation of the party in all his relations to persons and things around him, or, as elsewhere expressed, by proof of the surrounding circumstances. Thus, if the language of the instrument is applicable to several * * * species of goods, * * *; in all these and the like cases, parol evidence is admissible of any extrinsic circumstances, tending to show * * * what * * * or what things, were intended by the party, or to ascertain his meaning in any respect."

In Reynolds' Stephen on Ev., art. 91, sub. 8, p. 129, it

is said: "If the language of the document, though plain in itself, applies equally well to more objects than one, evidence may be given both of the circumstances of the case and of statements made by any party to the document as to his intentions in reference to the matter to which the document relates." See, also, Jones on Ev., §§455-479; *Board, etc.* v. *Church,* 30 Kan. 620.

It is a well settled rule of law that parol evidence may be given of the surroundings and circumstances and the situation of the parties under which a writing was executed in order to apply the writing to the subject-matter embraced in the writing. *Evansville, etc., R. Co.* v. *Shearer,* 10 Ind. 244, 247; *Bell* v. *Golding,* 27 Ind. 173; *Mace* v. *Jackson,* 38 Ind. 162; *Martindale* v. *Parsons,* 98 Ind. 174; *Clark* v. *Crawfordsville, etc., Co.,* 125 Ind. 277.

In *Bates* v. *Dehaven,* 10 Ind. 319, it is held that parol evidence of the circumstances surrounding a contract in writing, as well as the mutual acts of the parties in its fulfilment, is admissible to explain the meaning of the parties in the use of language otherwise obscure. Upon these general principles, upon which parol evidence is admissible to explain a latent ambiguity in a written contract, or to explain the language where it is obscure, the authorities are in accord. Another rule which seems to be firmly settled is that where parties give their contract a construction, the court will adopt that construction and hold the parties to it. *Frazier* v. *Myers,* 132 Ind. 71, and authorities there cited; *Beck, etc., Co.* v. *Evansville, etc., Co.,* 25 Ind. App. 662; *Toledo, etc., Co.* v. *Burgan,* 9 Ind. App. 604.

From the facts we have already stated, there is no question as to the construction the parties gave to the contract between them. It is very clear that both appellants and appellee treated the contract not as embracing the "D. Ohio Mill". At least, there is ample evidence from which the jury could find that they did so construe it.

The settlement of the question of the right to introduce

parol evidence under the facts and circumstances surrounding the transaction in explanation of the contract, and the further question that where the parties to a contract have placed upon it their own construction, the court will adopt that construction and hold them to it, relieves this case of many of the debated questions that are presented by the motion for a new trial arising under the admission and rejection of evidence, and the giving and refusing to give certain instructions. A careful examination of all these questions has led us to the conclusion that the record does not present any reversible error, and we do not think it would be profitable to enter upon a detailed discussion of them. We are firmly impressed with the conviction that the correct result was reached by the trial court.

Judgment affirmed.