INTERNATIONAL HARVESTER COMPANY OF AMERICA *v.* HAUEISEN.

[No. 9,425. Filed January 9, 1918.]

1. CONTRACTS.—*Written.—Merger of Oral Negotiations.*—All oral or verbal negotiations prior to a written contract are merged therein. p. 367.

2. CONTRACTS.—*Written Warranty.—Parol Evidence to Explain.— Admissibility.*—A written warranty that a tractor was "well made" and would "do good work" was ambiguous and uncertain, and in the buyer's action for breach of the warranty parol evidence as to the representations made by the seller's agents as to the uses to which the machine was adapted was admissible to remove the uncertainty in the warranty and to enable the court to apply it to the subject-matter. p. 367.

3. TRIAL.—*Limiting Application of Evidence.—Instruction.—Necessity of Requesting.*—Where a party desires to limit the effect of evidence to the particular purpose for which it was admitted, he should request an instruction limiting the application of such evidence. p. 368.

4. CONTRACTS.—*Construction.—Evidence.—Mutual Acts of Parties.* —Where a written contract is ambiguous, evidence of the mutual acts of the parties in reference to its fulfillment after it was executed is admissible to aid the court in correctly applying and interpreting the instrument. p. 369.

5. CONTRACTS.—*Ambiguous.—Construction Adopted by Parties.*— Where a contract is ambiguous, the interpretation and construction given by the parties will be adopted. p. 369.

International Harvester Co. v. Haueisen—66' Ind. App. 355.

6. CORPORATIONS.—*Agent.*—*Authority.*—A general sales agent of a corporation who effects a sale in its behalf has the authority to. bind his principal by the construction of the contract of sale adopted by him.  p. 370.

7. SALES.—*Contract.*—*Ambiguous.*—*Construction.*—*Evidence.*—*Construction Adopted by Vendor's Agents.*—In an action to recover the purchase price of a tractor engine alleged not to fulfill the warranty, evidence as to the interpretation placed upon the warranty embraced in the sales contract by the seller's agents before the buyer executed his note for the purchase price of the machine was admissible as to the construction of the contract, the buyer having been induced to give his note and pay the purchase price upon the construction thus placed upon the warranty.  p. 371.

8. SALES.—*Warranty.*—*Extension.*— *Consideraton.* — *Sufficiency.*— Where the buyer denied liability on a note given for the purchase price of a tractor engine, his payment of the note before maturity upon the seller's agreement that he would extend the warranty was a sufficient consideration for such extension, and a letter extending the warranty was admissible in evidence in an action by the buyer to recover the purchase price of the machine.  p. 371.

9. SALES.—*Action on Contract.*—*Instructions.*—*Breach of.*—*Warranty.*—In an action by the buyer to recover the purchase price of a tractor engine warranted by the seller, the giving of an instruction that plaintiff could recover in event the jury should find that there was a breach of the warranty, but which did not require plaintiff to comply with the terms of the warranty as a condition precedent, is reversible error.  p. 375.

From Marion Superior Court; *W. W. Thornton,* Judge.

Action by William C. Haueisen against the International Harvester Company of America.  From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Bernard Korbly* and *Willard New,* for appellant.

*Whitcomb & Dowden,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor for $2,410.14 in an action brought by him against appellant to recover the purchase price

of a tractor engine purchased by appellee from appellant for use on appellee's farm. The only ruling of the trial court assigned as error and relied on for reversal is the overruling of the motion for a new trial. By this motion appellant challenged the action of the trial court in admitting certain evidence, and in giving and refusing certain instructions.

The complaint is very long and, while its sufficiency is not challenged, the parties in their respective briefs differ as to the theory upon which the case was tried below, and as this difference enters largely into their respective contentions affecting the said several rulings relied on by appellant for reversal, it will be necessary to indicate those averments of the complaint which are of influence in the determination of its theory and the correctness of said rulings with reference thereto. They are in substance as follows: On March 11, 1912, appellee owned a river-bottom farm on White river, which was subject to overflow during periods of high water. The soil of said farm is of a sandy nature, made so by the sediment and deposits from the river. Appellant is a manufacturer of tractor engines operated by kerosene. These tractors were made to be sold to farmers to be used for drawing plows in breaking the soil, and for drawing mowers and reapers, in cutting wheat and other grains, and for operating threshing machines in threshing wheat and other grains. At said time, as well as at all other times involved herein, J. A. Everson was appellant's general agent, and W. F. Street was its sales agent at Indianapolis and, as such agents, had full power to represent appellant in the sale of its said tractors and in all matters herein set out. Prior to said date appellant began negotiations with appellee to sell him a tractor to be

used on said farm, for furnishing motive power for plowing the soil, for cutting wheat and other grain raised on said farm, and for operating a separator for threshing wheat and other grain raised thereon. Appellee then told appellant that said farm was a river-bottom farm, and that he was in the market to buy a kerosene tractor engine for said purposes, provided it could and would pull a gang of plows with twelve bottoms or plows, so as to plow the soil on plaintiff's said farm to a depth of ten inches, and would draw mowers or reapers for cutting wheat and other grain raised on said farm, and would propel a separator for threshing wheat and other grain raised on said farm, and do good work in all of said services. Appellant, and said Everson and Street, for and on its behalf, then represented to appellee that their forty-five H. P. tractor kerosene engine would answer said purpose, and in all of said services would do good work, and that for said purpose said tractor had adequate power and was well and properly built, and was made of good material, and was strong and durable. Appellee had then never owned a tractor or engine used for said purposes and was ignorant of the requirements of such an engine, and relied upon the representations so made by said Everson and Street, and so relying thereon, was induced to sign and did sign an order to appellant for one of its said forty-five H. P. "International Tractor Kerosene Engines," for which he agreed to pay $2,400 to be evidenced by his note due January 1, 1912.

The warranty contained in such order is set out and a copy of the order is made a part of the complaint by way of exhibit. It is then averred that pursuant to said order the tractor engine was delivered to appellee at his farm; that in conformity with

arrangements before made, and before appellee had made any use of said tractor, said Everson, Street, and other agents and employes of said appellant, were at appellee's farm, where said tractor was to be used, for the purpose of adjusting it and assisting appellee in starting and using it, and they then saw the soil and ground and farm on which said tractor was to be used, and were fully acquainted with their character, nature and condition.

Averments follow showing a trial of said tractor in the presence of appellant's said agents, Everson and Street, the particulars thereof, and the results, that it did not work well, that appellee told said agents that it did not do good work and was not satisfactory, that said agents protested that the soil was too wet, and stated that said tractor could and would do said work and plowing, and requested appellee to keep said tractor and use and test the same, and promised and agreed to assist appellee in making said tractor do said plowing in said soil on said farm, all as before represented. The particulars of additional trials made at the request of appellant's said agents, with substantially the same result and failure in each instance, are set out in detail, together with the repeated efforts of appellant's said agents to adjust said tractor, and their continued assurances and representations to appellee that said tractor could and would do said plowing on said farm. It is also averred that when appellee executed the note provided for in his said order for said tractor, he told said Everson that said tractor was not satisfactory and did not do good work, and objected to the giving of said note, whereupon said Everson, for the purpose of inducing appellee to give such note, stated

to him that it was necessary in keeping their books in proper form, and represented that said tractor could and would do said work, and would plow said soil on appellee's farm; and then promised and agreed that appellant would take care of appellee and protect him from loss on account of said order and said tractor; that appellee relied on said promises, and relying thereon signed said note, not then knowing that said tractor was incapable of performing said services or of doing good work on account of its original construction, etc.; that on December 9, 1912, appellant called upon appellee to pay said note in order to get the advantage of the twelve per cent. discount provided for, and appellee again notified appellant that the tractor was not satisfactory, that it did not fulfill the warranty, and refused to pay said note; that thereupon appellant, through said Everson, again repeated its representations and promises substantially as above set out, and further promised that if appellee would forthwith pay said note appellant would extend said warranty and would see that said tractor would do said plowing and would perform said services and would do good work therein and would stand behind appellee and protect him from any loss on account of said tractor or on account of said order; that, relying on said representations, etc., and not knowing that said tractor was incapable of performing said services or doing good work because of its original construction, appellee, on December 16, 1912, paid appellant $2,112, being the amount of said note less twelve per cent. discount, and thereafter the appellee received from appellant a letter, which is set out, and, omitting the caption, etc., is as follows:

"Indianapolis, Ind., December 16, 1912.
"Mr. William C. Haueisen,
"Indianapolis, Indiana:
"Dear Sir:—

"In consideration of your making cash payment for 45 H. P. Tractor, as per order of March 11, 1912, we hereby extend warranty therein until the spring of 1913.

"Yours very truly,
International Harvester Company of America,
By J. A. EVERSON, General Agent."

Averments then follow showing other trials and tests of said tractor in the spring of 1913, with results substantially the same as the previous trials; that appellant's agent, Everson, was notified that said tractor was not doing good work, and in response sent experts down to appellee's farm to adjust and try to make said tractor work; that appellant then insisted that the soil was too wet and requested appellee to keep said tractor and try it in August for fall plowing, and continue his test of said tractor for the uses and purposes on his farm for which it was purchased; that upon such requests, accompanied by a further representation that appellant would take care of appellee and protect him from loss on account of said tractor, appellee kept it and tested it in cutting wheat on said farm and in running a separator to thresh the wheat raised on said farm, and again tested it for plowing in August, 1913; that in cutting wheat and in operating the separator it pulled too slowly to do good work, and in plowing it choked down and stalled with six plows running at a depth not exceeding six or seven inches; that Everson was again notified of said results and that said tractor did not do good work and was not satisfactory, whereupon he, with a representative of appellant

from Chicago, represented to be an expert, visited appellee's farm and in their presence another test of said tractor was made with a gang of plows with six bottoms set for plowing seven inches deep; that upon this test said tractor choked down and stalled and would not pull said plows and failed to do good work, whereupon said expert said to raise two of the plows out of the soil; that thereupon and when it became apparent to appellee that said tractor was defective in its construction, and incapable of performing good work in said services for which it has been ordered, and incapable of fulfilling said warranties, all as herein set out, appellee refused to proceed further with said tractor and thereupon demanded of said Everson that he repay to appellee the purchase money paid by him for said tractor, and tendered said tractor back to appellant, and offered to return and deliver said tractor to appellant at its place of business at Indianapolis; that appellant refused to return said purchase money or to receive said tractor back from appellee, and Everson then said to appellee that said tractor did as good work on said farm as any tractor could or would do, and stated that the entire trouble was the soil on said farm. Then follows averments to the effect that said tractor was operated by competent persons; that it was not made and constructed properly to do good work on said farm; that its failure to do good work resulted from defects in construction and not from the character of the soil on said farm; that appellant at all times knew the farm and the character and nature of the soil, and knew that said tractor was ordered by appellee to perform the services, before set out, on said farm and not elsewhere; that during the time appellee kept and continued his test of said

tractor on said farm, said Everson continued to represent and assure him that said tractor could and would do good work on said farm and that appellant would make it do good work, etc.; that the continued operation of said tractor cost appellee more than the benefit derived from its use; that appellee rendered appellant friendly assistance to make said tractor work and performed the conditions of said order and warranty on his part to be performed; that because of said matters appellee has been damaged in the sum of $2,112, the amount paid for said tractor with interest at six per cent. from December 16, 1912, the date of payment, and judgment is asked accordingly.

The express warranty contained in the written order filed as an exhibit with the complaint, pertinent to the questions presented by the appeal is as follows:

"International Harvester Company of America * * * hereby warrants said * * * engine to be well made, of good material and durable with proper care, and to do good work if properly operated by competent persons, with sufficient power, and the printed rules and directions of the manufacturer intelligently followed. If, after three days' trial by the purchaser said property shall fail to fulfill the warranty, written notice thereof shall at once be given to said company at Harvester Building, Chicago, Illinois, and also to the agent through whom the same was purchased, stating wherein it fails to fulfill the warranty, and reasonable time shall be allowed said company to send a competent man to remedy the difficulty, the purchaser rendering necessary and friendly assistance. Said company reserves the right to replace any defective parts, and, if then the machinery cannot be made

to fulfill the warranty, the part that fails is to be returned by the purchaser, free of charge, to the place where received and the company notified thereof, and, at the company's option, another substituted therefor that shall fill the warranty, or the notes and money for such part immediately returned, or the amount credited on the notes that have been given, and no further claim shall be made on said company.

"Failure to make such trial, or to give notice as herein provided, shall be conclusive evidence of the fulfillment of the warranty, and the company shall be released from all liability. * * *

"This express warranty excludes all implied warranties, and said company shall in no event be liable for breach of warranty in an amount exceeding the purchase price of the defective thresher, attachment or engine."

It is insisted by appellant, in effect, that the case was tried below upon the theory that appellee was entitled to recover upon an implied warranty, viz., a warranty that the tractor engine sold by appellant was warranted to do good work, etc., for the purposes for which appellee bought it on the particular farm where its use was contemplated and intended under the terms of the purchase and sale; that evidence was admitted in support of such theory and instructions given in accord therewith; that in admitting such evidence and in the giving of such instructions the court erred, because the exhibit filed with the complaint shows an express warranty, and provides that such express warranty excludes all implied warranties.

On the other hand, it is contended by appellee, in effect, that his action is predicated upon the express warranty made part of the contract or order given for the tractor, as applied to the subject-matter of

such order, and as construed and interpreted by appellant and appellee in their efforts to consummate such purchase and sale, and that the evidence and instructions were pertinent and proper under such theory.

As pertinent to and affecting the question whether the express warranty contained in the order filed with the complaint excludes any implied warranty, 2 Mechem Sales, §1260, says: "Whether, however, an express warranty upon one subject will exclude an implied warranty upon another, as whether an express warranty of quality will exclude an implied warranty of title, or *vice versa,* is a question upon which there may be more room for doubt. It is, of course, possible for the parties by their contract to declare that the expressed warranty is the only one that shall obtain between them, and such a declaration will be effective. There are also cases which seem to hold that the expression of any warranty prevents the implication of any, particularly where the express warranty is also a written one; but the weight of authority is undoubtedly to the effect that an implied warranty may arise notwithstanding an express one, where each relates to a different subject-matter, and the implied has not been expressly excluded." In the case of *Reynolds* v. *General Electric Co.* (1905), 141 Fed. 551, 556, 73 C. C. A. 23, 28, the court said: "An express warranty of one of the qualities of an article excludes an implied warranty of other qualities of a similar nature. The exaction or acceptance by the purchaser of personal property of a warranty of one quality raises a conclusive presumption that he did not desire, or could not secure, or the parties agreed that he should not have, the warranty of others of the same character." See,

also, cases there cited, and *Reeves & Co.* v. *Byers* (1900), 155 Ind. 535, 58 N. E. 713; *Sullivan Machinery Co.* v. *Breeden* (1907), 40 Ind. App. 631, 82 N. E. 107; *Lombard, etc., Co.* v. *Great Northern Paper Co.* (1906), 101 Me. 114, 120, 63 Atl. 555, 6 L. R. A. (N. S.) 180; *La Crosse Plow Co.* v. *Helgeson* (1906), 127 Wis. 622, 106 N. W. 1094; *McCormick, etc., Machine Co.* v. *Allison* (1902), 116 Ga. 445, 42 S. E. 778; *Penn, etc., Glass Co.* v. *De La Vergne Mach. Co.* (1914), 58 Ind. App. 333, 106 N. E. 722.

However, inasmuch as appellant in effect concedes the sufficiency of the complaint, but insists that it is predicated upon the express warranty contained in said written order, and that appellee must recover, if at all, upon such warranty, and appellee in effect concedes this contention, the question of implied warranty need not be further considered, and hence our determination of the questions whether there was error in the several rulings of the trial court, relied on for reversal, will be upon the assumption that the complaint proceeds upon the theory of a right to recover on account of the breach of said express warranty.

In view of the conclusion which we have reached in our disposition of this case, we deem it unnecessary to take up separately the several objections to the admission of evidence. It is sufficient to say that the trial court permitted witnesses to testify to certain statements made by Mr. Everson, the general agent, and Street, the sales agent, during the negotiations for the sale of said tractor, as to what said tractor would do, appellee being permitted to testify that they told him that he could use the tractor for threshing wheat, running ensilage cutters, shredders, etc., and that he, Street, afterwards called him up

and tried to sell him a shredder; that Street was permitted to testify that a certain "picture in the catalogue was a representation made to prospective purchasers as to what the tractor would do in the way of work." It is insisted that the admission of this evidence was error because the action is based on the express warranty contained in the written order, and that all preliminary negotiations and representations are merged therein, and that in his written order appellee expressly agreed that "no representation made by any person as an inducement to give and execute the within order shall bind the company."

It is true, as appellant contends, that all oral or verbal negotiations were merged in the written instrument, but we think another rule, which is equally well settled, has application in this case. The express warranty sued on does no more than warrant that the tractor sold will "*do good work*" and is "well made." The warranty does not indicate "*at what*" it will do good work, or "for what" it is well made. In other words, there is uncertainty and indefiniteness in the written warranty in the respect indicated, and to remove this uncertainty and to apply the warranty to the subject-matter intended by the contracting parties parol evidence is admissible. *Thomas* v. *Troxel* (1900), 26 Ind. App. 322, 328, 59 N. E. 683; *Mace* v. *Jackson* (1871), 38 Ind. 162, 166; *Clark* v. *Crawfordsville Coffin Co.* (1890), 125 Ind. 277, 25 N. E. 288; *Wills* v. *Ross* (1881), 77 Ind. 1, 13, 40 Am. Rep. 279; *Stockwell* v. *Whitehead* (1910), 47 Ind. App. 423, 430, 94 N. E. 736; *Burke* v. *Mead* (1902), 159 Ind. 252, 258, 64 N. E. 880; *Ames* v. *Ames* (1910), 46 Ind. App. 597, 91 N. E. 509; *Martindale et ux.* v. *Parsons* (1884), 98 Ind. 174, 179; *Ditchey* v. *Lee*

(1906), 167 Ind. 267, 274, 78 N. E. 972; *Howard* v. *Adkins* (1906), 167 Ind. 184, 188, 78 N. E. 665; *Reissner* v. *Oxley* (1881), 80 Ind. 580, 584; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 400, 401, 53 N. E. 767, 53 L. R. A. 753; *McClamrock* v. *Flint* (1885), 101 Ind. 278. In the case of *Stockwell* v. *Whitehead, supra,* at pages 430 and 431, the court said: ''For the purpose of applying the terms of a contract to its subject-matter and removing any uncertainty from such application, parol testimony is admissible. * * * . While it is true that parol evidence is not admissible to vary, enlarge or contradict the terms of a writing, it is admissible to explain its terms. * * * This evidence was also competent to determine the entire contract, for it is fully established that if a contract appears to be incomplete, resort may be had to oral evidence to determine the entire contract.''

Again, in the case of *Ditchey* v. *Lee, supra,* the Supreme Court, at page 275, says upon this subject: ''It is an elementary proposition that parol evidence is not admissible to impeach or vary the contents of a written contract, or to control its legal effect; but such evidence is competent to explain the circumstances under which the writing was executed, to show the real consideration upon which it rests, to identify the subject-matter where proper reference is made, and to give effect to the contract.''

While some of the admitted evidence, *supra,* especially that part relating to the effort of Mr. Street to sell appellee a fodder shredder, may be open 3. to the criticism that it could throw little if any light on the subject indicated, said evidence, in the main, was pertinent to said question, and, under the authorities *supra,* its admission was proper for such purpose. If appellant desired the effect of

said evidence limited to the subject to which we have indicated it was pertinent and proper, it could have tendered an instruction to that end.

The trial court also permitted appellee to testify to certain representations made by appellant's general agent, Mr. Everson, and its sales agent, Mr. Street, to the effect that they would make the tractor do good work, etc. Error is predicated on the admission of this evidence, and in support thereof appellant insists in effect that the appellee is bound by the warranty sued on, and that by its express terms it provides against any other warranty, that under such contract said agents had no authority to in any way bind appellant by any statement or representation that they might make.

We have already indicated the rule permitting the admission of oral evidence connected with the making of a written contract, for the purpose of

4. aiding in a correct application of the writing to its subject-matter or to remove uncertainty, ambiguity or obscurity in the language used in the writing. The courts also recognize that in such cases they may be materially aided in a correct application and interpretation of the writing by the acts of the parties in connection therewith, and hence, in such case permit evidence of the mutual acts of the parties to the contract in reference to its fulfillment *after it was entered into;* or, as it is sometimes

5. expressed, the court in such doubtful cases will adopt that interpretation and construction of the contract which the parties themselves have adopted. *Wilson* v. *Carrico* (1895), 140 Ind. 533, 539, 40 N. E. 50, 49 Am. St. 213; *Childers* v. *First Nat. Bank, etc.* (1896), 147 Ind. 430, 46 N. E.

825; *Diamond Plate Glass Co.* v. *Tennell* (1898), 22 Ind. App. 132, 52 N. E. 168; *Pate* v. *French* (1890), 122 Ind. 10, 23 N. E. 673; *City of Vincennes* v. *Citizens' Gas Light Co.* (1892), 132 Ind. 114, 31 N. E. 573, 16 L. R. A. 485; *Roush* v. *Roush* (1899), 154 Ind. 562, 569, 55 N. E. 1017; *Ketcham* v. *Brazil Block Coal Co.* (1883), 88 Ind. 515, 529; *Bates* v. *Dehaven* (1858), 10 Ind. 319, 322; *Board, etc.* v. *Gibson* (1901), 158 Ind. 471, 485, 63 N. E. 982; *Indianapolis Cabinet Co.* v. *Herrman,* (1893), 7 Ind. App. 462, 34 N. E. 579; *Frazier* v. *Myers* (1892), 132 Ind. 71, 31 N. E. 536; *Scott* v. *Lafayette Gas Co.* (1908), 42 Ind. App. 614, 620, 86 N. E. 495.

Upon this subject, the Supreme Court, in the case of *City of Vincennes* v. *Citizens' Gas Light Co., supra,* said: "That it is the duty of a court, where the language of a contract is indefinite or ambiguous, to adopt the construction and practical interpretation which the parties themselves have put upon the contract, and to enforce that construction, has been so often asserted by this and other courts that no doubt of its soundness can be entertained."

As affecting the other question suggested by appellee, viz., that of the authority of Everson and Street to bind appellant by the construction of the contract adopted by them, it may be said that the complaint charges, and the proof shows, that J. A. Everson was the general agent, and that W. F. Street was the sales agent of appellant. As such general agent of appellant, Everson represented and, for said purpose, was the appellant. *Springfield Engine, etc., Co.* v. *Kennedy* (1893), 7 Ind. App. 502, 507, 511, 34 N. E. 856; *Port Huron Engine, etc., Co.* v. *Smith* (1898), 21 Ind. App. 233, 239, 52 N. E. 106; *Siebe* v. *Heilman Machine Works*

(1905), 38 Ind. App. 37, 41, 77 N. E. 300; *Garr, Scott & Co.* v. *Rose* (1891), 3 Ind. App. 269, 276, 29 N. E. 616; *Germania Fire Ins. Co.* v. *Stewart* (1895), 13 Ind. App. 627, 639, 42 N. E. 286; *J. F. Seiberling & Co.* v. *Newlon* (1896), 16 Ind. App. 374, 377, 43 N. E. 151.

Under the averments of the complaint (and there was evidence in support thereof), all that was said and done by said general agent and sales agent, indicating their interpretation of said contract, was said and done during and as a part of the trials or tests of said engine, in the line of perfecting the conditional sale made by them, and it is shown further by said averments that the interpretation placed on said contract of warranty by said agents was placed thereon by them before appellant executed the notes provided for in said order, and before the written extension of the warranty set out in the complaint, and that appellant was induced to give his note for and afterwards pay for said tractor, upon the construction thus placed on said warranty by appellant's said agents. Under such circumstances, appellant is bound by the construction and interpretation of said warranty adopted by its said agents. *Garr, Scott & Co.* v. *Rose, supra; McCormick, etc., Machine Co.* v. *Gray* (1885), 100 Ind. 285; *Port Huron Engine, etc., Co.* v. *Smith, supra; J. F. Seiberling & Co.* v. *Newlon, supra; Germania Fire Ins. Co.* v. *Stewart, supra.*

A copy of the letter set out in the complaint and indicated *supra,* extending the warranty on said tractor, was admitted in evidence. Appellant insists that this extension was made after the sale was completed, and was without consideration, and that, for this reason, the court com-

mitted error in admitting said letter. We cannot agree with this contention. The evidence shows that the note given for the tractor was not due until January 1, 1913. The right to the twelve per cent. discount was conditioned on its payment before December 1, 1912. The note was not paid until December 16, 1912. It appears therefore that the note was paid before due and after day of discount had passed. When the discount period had passed, letters passed between appellant and appellee, and they had one or more personal interviews. From these letters and interviews, it appears that appellee refused to pay said note, or at least questioned his liability thereon, because of the failure of the tractor to fulfill its warranty, whereupon the appellant agreed that if appellee would pay the note, it would extend its warranty on the tractor to the spring of 1913. Under these circumstances and conditions the note was paid, and the letter extending the warranty was given. These facts show a sufficient consideration for the extension of the warranty. *Buck* v. *Smiley* (1878), 64 Ind. 431; *U. S. Mortgage Co.* v. *Henderson* (1886), 111 Ind. 24, 27, 12 N. E. 88.

Several instructions are complained of by appellant upon the ground that they embody the idea that appellee might recover if the tractor sold by appellant failed to fulfill the implied warranty that it would do the work on appellee's farm which he contemplated at the time of its purchase. It is claimed that this theory of appellee's cause of action is illustrated and made specially prominent by instruction No. 5, given by the trial court upon its own motion. This instruction is as follows: "The contract between the plaintiff and the defendant which is made an exhibit in the complaint, provides that the

express warranty as stated in it excludes all implied warranties. This provision is sufficient to exclude all oral or verbal warranties given by the defendant or its agent on said tractor engine as a part of its preliminary negotiations for the sale to the plaintiff, and such oral and verbal warranties, if there were any, were merged in the written contract, and the rights of the plaintiff and defendant were controlled by said written contract and its provisions. Nevertheless, notwithstanding these express provisions in the contract, if the defendant, as a dealer in traction engines, sold the tractor engine in controversy to be used by plaintiff to plow on his farm southwest of the city of Indianapolis, and the inducement for the purchase was that the tractor engine would work upon that farm sufficiently well, taking into consideration the character of the soil upon which it was to be used, to enable the plaintiff to plow the land of the farm by ordinary use, and it failed to do so, the express warranties set out in the contract of sale did not exclude a representation, if any were made, that the plow would work upon the farm of the plaintiff, and even though no representation was made by the defendant that the tractor engine would work sufficiently well on the farm to enable the plaintiff to plow, yet, if the defendant was informed by the plaintiff that he was purchasing the tractor engine for that purpose, and the defendant or its agents, with knowledge of that statement, sold the tractor engine to the plaintiff for that purpose, then the express warranties set out in the contract of sale would not exclude the right of the plaintiff to maintain this action for the alleged failure of the engine to properly work upon the farm.''

We think the instruction is, in a sense at least,

open to the criticism made by appellant. It in effect told the jury that if it should find certain facts, enumerated in the instruction, the warranty expressed in the contract did not *exclude* a representation, if any was made, that the tractor would work on the farm of plaintiff, inferentially, at least, recognizing that there might be an implied warranty that the tractor would work on said farm, whereas the theory of the complaint admitted by appellee is that the subject-matter of the order or the thing ordered was a tractor that would do good work, etc., on appellee's farm, and that the warranty in the order given was interpreted and construed by the parties as applying to a tractor constructed to perform the kind of services indicated in the complaint, and one that would, in the performance of such services on appellee's farm, do good work, etc. In other words, the theory of the complaint, as before indicated, is that the warranty claimed by appellee and set up in his complaint, was *included in* and was part of the express warranty contained in the exhibit filed with said complaint, as intended, construed and interpreted by appellant itself.

However, inasmuch as appellee's right of recovery depended upon the existence of the warranty claimed rather than on its character as to being expressed or implied, it is possible that no harm resulted from the form of the instruction, but this we need not and do not determine for the reason that the judgment below must in any event be reversed, and this instruction need not be repeated in its present form in the event of another trial.

The trial court at appellee's request gave the following instruction: "The court instructs you that by the terms of the order for the tractor engine

set out in the complaint herein, the defendant 9. warranted said tractor engine to do good work if properly operated by competent persons with sufficient power, following the directions of said defendant. This is an express warranty that said tractor engine would do good work under said conditions when used by plaintiff in doing the things for which said tractor was sold to him. If you find from the evidence in this case that the defendant was a dealer in tractor engines as described in the complaint and that plaintiff did not have an opportunity of inspecting and testing said tractor prior to signing the order therefor, or if you find from the evidence that said tractor engine was sold to said plaintiff by said defendant to be used by said plaintiff to plow with on said plaintiff's farm southwest of the city of Indianapolis, and to cut wheat or grain by pulling binders, reapers or machines to cut wheat with and run and operate a separator in the threshing of grain, and if you find that said tractor engine did not do good work in said services or in any one of them, then and in that case I instruct you that the warranty contained in said order was broken by the defendant and said defendant would be liable to plaintiff.''

It will be observed that this instruction tells the jury that, if it finds the facts to be as set out in the instruction, then the warranty contained in said order was broken by the appellant, and it ''would be liable to plaintiff.'' That part of the ''warranty and agreement'' which put upon appellee the necessity of doing certain things in order to avail himself of the benefits of said warranty are entirely ignored in said instruction, and appellant is made liable for the breach of its warranty, regardless of whether appellee performed the conditions of said agreement

on his part to be performed, or whether the performance thereof had been waived by appellant. This instruction was, we think, without doubt both erroneous and prejudicial to appellant.

There are other instructions objected to by appellant, and other questions presented in its brief, which we deem it unnecessary to discuss or determine. They will probably not arise upon another trial, or if they do, our disposition of the other questions will be a sufficient guide for their proper determination by the trial court.

Judgment below reversed, with instructions to the trial court to grant a new trial, and for such other proceedings as may be consistent with this opinion.

NOTE.—Reported in 118 N. E. 320. Contracts: admissibility of parol evidence to explain, 6 Am. Rep. 678, 28 Am. Rep. 210, 17 Cyc 664, 728. See under (4) 13 C. J. 546.