## BARLEY v. SANSBERRY.

[No. 9,509.   Filed June 25, 1918.]

1. APPEAL.—*Briefs.—Waiver of Error.*—Where no reference, either express or implied, is made in appellant's points and authorities to a ground of the motion for new trial, which was overruled, such ground is waived.   p. 142.

2. PARTNERSHIP.—*Breach of Contract.—Action.—Evidence.—Sufficiency.—Good Faith.*—In an action by one partner against another to recover damages for an alleged breach of a partnership contract providing for the purchase from a trustee in bankruptcy of an automobile factory and that certain payments be made to plaintiff if an option for the repurchase of the plant by its former owner was exercised, evidence *held* to show that dependent partner, in selling under the option on time instead of for cash, acted in good faith and that plaintiff was tendered all that was due him under the contract, so that the evidence was sufficient to sustain the trial court's finding for defendant.   pp. 147, 149.

3. PARTNERSHIP.—*Breach of Trust.—Action.—Burden of Proof.*—In an action by a partner to recover damages for an alleged breach of a partnership contract, the burden is on the plaintiff to show both the partnership and its breach.   p. 148.

4. CONTRACTS.—*Written.—Explaining.—Parol Evidence.*—In an action by one partner against another for breach of a partnership contract for the purchase of an automobile factory, which contained an option for the repurchase of the plant by its former owner, parol evidence as to the option was admissible to explain the situation of the parties when their written contract was executed, where such evidence in no way changed the provisions of the written agreement, but only purported to make clear certain references therein. p. 148.

From Henry Circuit Court; *Fred C. Gause,* Judge.

Action by Albert C. Barley against James W. Sansberry. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Barnard & Jeffrey* and *Condo & Brown,* for appellant.

*Kittinger & Diven, Forkner & Forkner* and *Charles K. Bagot,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor in an action brought by appellant in which he sought to recover damages for an alleged breach of a partnership contract. For convenience and brevity appellant will be referred to herein as "B," and appellee will be referred to as "S." The provisions of said contract of partnership pertinent to the questions presented by the appeal, abbreviating the names of the parties as indicated, and amounts by use of figures only, are as follows:

"This agreement * * * entered into * * * February 19, 1914, by and between S, of Anderson, Indiana, and B, of Streator, Illinois, witnesseth:

"That the said parties agree hereby to enter into and form a partnership for the purpose of purchasing certain property, to wit: All that

part of the personal property to be sold by Frederick VanNuys, trustee in involuntary bankruptcy proceedings of Henry Nyberg and the Nyberg Automobile Works, that is not covered by a lien as declared in favor of S and The National Exchange Bank of Anderson, Indiana, and the tax lien as held by H. V. Otto, trustee.

"It is not intended hereby to enter into any contract as to the purchase of said property covered by said liens, other than *this contract depends upon S, who holds the larger portion of said lien, securing the title to all said property by virtue of his * * * lien * * *.*

"It is agreed that said partnership will buy said personal property not covered by said lien * * *, for the price * * * of $7,500.00, of which sum B will pay $1,000.00 in cash and S $6,500.00; the title to said property to vest absolutely in *. * * S.

"And said parties *have given an option* and do hereby give an option to one Henry Nyberg that the said Nyberg may, within ten (10) days from this date, purchase all of said personal property so purchased by this partnership for Seventy-five Hundred Dollars as aforesaid, for the price and sum of $8,500.00 cash; and *if said option is not exercised by said Nyberg within said time,* then it is understood and agreed that the *said property may remain where it now is* in the plant and buildings on the real estate which S will secure (*if he shall secure the same by virtue of his said lien*), for the space of four (4) months, the said partnership to pay as rental for said buildings during said time, to said S, the sum of

$100.00 per month, and S *is authorized to accept said payment from and close deal with*  *  *  *  *Nyberg, and turn over property to him, in which case*  *  *  *  *S is to pay B his $1,000.00 paid and $500.00, being* ½ *of said profit, in full of his interest in this contract.*

"B agrees to take charge and absolute control of all of said property, and to sell the same as rapidly as he can at private sale, for cash; and the cash so received shall be the property of  *  *  *  S, and turned over to him as rapidly as  *  *  *  received. But  *  *  *  B is only to sell repair parts during his option, and if Nyberg completes his option, then he will be entitled to the receipts from repairs less expenses.

"Said B shall have the privilege of taking from said property any of same, not exceeding in value $2,000.00, at 50% of its appraised value, paying for the same when he so takes it in spot cash. B is to sell of the remainder of said property, except that which he so takes himself, at not less than eighty per cent. of its appraised value, unless by special agreement to the contrary.

"B also insures that he will sell within four (4) months at least $6,500.00 of said property in addition to the amount necessary to pay expenses, and otherwise, he will advance the money to pay S the sum of $6,500.00 which would be in payment of the said sum of $6,500.00 so advanced by S, as hereinbefore stipulated. Then from the additional sales made, the sum of $1,000.00 is to be next paid to B, in payment of the amount which he has advanced plus any amount which B

has paid to S to complete the $6,500.00 to be paid him within four months; and from the residue to be sold herein as specified, and otherwise, after paying the necessary running expenses (B giving his time thereto without remuneration) 3/5 of the net profits shall go to B and 2/5 thereof to S.

"It is further agreed that if all said property is not sold at private sale within four months * * *, then the residue shall be sold at public outcry for what it will bring, in cash, so as to end said partnership agreement.

"S further agrees that B may at any time within four months pay to said S said sum of $6,500.00 advanced as aforesaid, and $1,500.00 as and for his profits, in which event said personal property shall all belong to B.

"It is further agreed that during the existence of this partnership agreement, the manager thereof may sell the parts and repair parts from the Rider-Lewis Company stock, at list price, which will belong to S; and also may sell any other machinery or property belonging to S at prices satisfactory to S, and for making said sales the said partnership shall have 15% of the amount realized therefrom.

"It is further agreed that this partnership agreement shall last and be in full force for a period of four (4) months and enough longer to sell at public outcry the residue of said property and close the matter out.

"*Should S not be able to get his lien question settled and get title to said real estate and other property satisfactory to him, then this agreement shall not be in force. * * ** 

"In Witness Whereof," etc.   (Our italics.)

The Henry Nyberg mentioned in said contract will hereinafter be referred to as "N."

Following this agreement, the complaint contains averments showing a purchase of said property by B and S, in accord with the terms of such agreement, a delivery to them of a bill of sale therefor, and that they "have been partners in the ownership of said personal property and the proceeds of the sale thereof except as hereinafter averred." The complaint then proceeds as follows: "That, by the terms of said written contract, it was agreed between the plaintiff and defendant S that they would give to defendant N, an option to purchase said personal property within ten (10) days from the date of said contract at and for the price of $8,500.00 cash but it was not agreed in said contract that said personal property should be optioned and sold by the plaintiff and defendant S or either of them to any other person than N nor upon any other terms than $8,500.00 in cash within said period of ten (10) days. *That, at the time said written contract was executed, it was fully known and understood between the plaintiff and defendant S that N was insolvent and a bankrupt and that it was impossible for him to exercise any option to purchase said personal property within ten (10) days from said date for $8,500.00 in cash and that it was impossible for him to raise $8,500.00 in cash within said period of ten days from any available resources of his own and that said provision as to said option to said N was placed in said contract and that said parties thereto both understood that same was placed in said contract for no other purpose than that they had tacitly promised N that, if he would pay them $8,500.00 within said ten-days period that they would*

*give him personally the benefit of purchasing said*
*personal property at the price aforesaid, but that,*
*when said contract was executed, neither of the par-*
*ties thereto had any idea of or any belief in the fact*
*that it would be possible for N, from any resources*
*of his own available to him, to exercise said option,*
*purchase said personal property and pay said price*
*of · $8,500.00 therefor within * * * 10 days.''*
(Our italics.)

It is then averred that said property was at all
times of the reasonable value of $20,000; that B fur-
nished S with a schedule of specific articles of said
property, which he desired to purchase under the
terms of said agreement at $2,000, being 50 per cent.
of the appraised value of said articles; that B was
ready, able and willing to pay $2,000 cash for said
articles, and so notified S, and demanded that they
be turned over to him, in accord with the terms. of
said agreement; that said articles were of the value
of $5,000, and that B could sell them for said sum at
a net profit to himself of $3,000; that he was ready,
able and willing to pay S $8,000 for his interest in
all of said property, as provided in said contract, and
so notified S; that S, from and after February 26,
1914, refused to recognize B as having any interest
in said property; that about February 19, 1914, S
took charge and control of said property, and since
that time has been selling and disposing of the same;
that, on February 26, S notified B that N had exer-
cised his option to purchase said property, and S then
mailed to B a check for $1,500 as his part of said
option purchase, and again, on February 27, person-
ally told B that N was the owner of and in possession
of said property, and that he, B, had no further in-

terest therein; that B refused to accept said check and tendered it back; that S never in fact sold said property to N; that N never paid S a penny on said property, and that S's notification, statements and representations that N had exercised his option of purchase were false and were made for the fraudulent purpose of cheating B out of his partnership interest in said property.

The written contract between N and S is then set out. This contract is lengthy, and we indicate only those provisions pertinent to the questions presented by the appeal. They are as follows:

"That Whereas, on the 31st day of January, 1914, by decree before the referee in bankruptcy, in the matter of N and Nyberg Automobile works, involuntary bankrupts, on the intervening petition of S, said S was decreed to have a first and prior lien for the amount of * * * $11,703.26, and the National Exchange Bank of Anderson, Indiana, was decreed to have a lien second only to that of S in the amount of * * * $9,043.45 on the following described real estate and personal property, to wit: * * *

"And Whereas, the same was by said referee ordered sold on the 16th day of February, 1914, and S has made arrangements, by virtue of said sale and otherwise, to become the sole and exclusive owner in fee simple of all said described property; and

"Whereas, S, in connection with one B, has made arrangements to become the owner, for the sum of $7,500.00, of all the personal property sold by said Trustee not included in or covered by the lien of S and said Bank, which said prop-

erty was also sold by said Trustee in Bankruptcy on the 14th day of February, 1914; and

"Whereas, there is also a lien on said real estate in favor of one H. V. Otto, Trustee, by reason of a tax certificate, amounting when the same was sold, to $1,204.64 and penalties thereon; and

"Whereas, S and B·in their agreement for the purchase and taking over the title to said personal property, as aforesaid, have given N the option to take the same over within 10 days for * * * $8,500.00;

"Now, on account of all said considerations, *and the further consideration of N and his wife executing their quitclaim deed conveying to S all their right, title and interest in and to said above described property, by which S becomes the owner absolutely in fee simple without any liens whatsoever or rights in anybody else in and to said property, said S agrees hereby to take over the said option of N as to purchase of said personal property and to pay B all the cash he had paid in, for and upon the purchase of said property and one-half of said profit, to wit, $500.00,* and thereby S becomes the absolute owner of all of said property for the amount due on said decretal order in favor of himself, of * * * $11,703.26 with interest from the 31st day of January, 1914, said sum of * * * $9,043.45 due the National Exchange Bank of Anderson, Indiana, with interest from the 31st day of January, 1914; and the amount it may take to pay said Otto, Trustee, for said tax certificate and in redemption thereof, and any other taxes or

penalties there may be upon said property; and to pay $8,000.00 by reason of paying $7,500.00 to the Trustee in Bankruptcy, as aforesaid, and $500.00 to B for said personal property; all of which consists of the amount that S will have invested in said property, and having that amount invested therein he becomes the sole and absolute owner of all of said property, without any liens or rights of any other person whatsoever therein or thereto.'' (Our italics.)

Here follows in detail the arrangement between N and S, which, in effect, gives N charge and control of all of said property as agent for S, with power to sell the same, subject to certain named conditions and restrictions, and with a provision binding S to convey to N all of the remaining property when S has been fully paid the several amounts which he has invested in said property, as set out in said contract. It is then alleged that S, about the time the contract between him and appellant was executed, was able to and did get said lien question, and the title to said real estate, referred to therein, settled by contracts, deeds, etc. There is a prayer for damages and an accounting of the partnership affairs, etc.

The answer is in five paragraphs, consisting of a general denial and four affirmative paragraphs, which present, in varying form, the principal issues, viz., payment, that the sale to Nyberg was made in accordance with the terms of the partnership agreement, and that appellee thereafter tendered to appellant the full amount due him as a result of such sale, which tender was refused. The issues thus formed were submitted to the court for trial, with the result before indicated.

A motion for new trial, filed by B, was overruled, and this ruling alone is assigned as error and relied on for reversal. This motion contains but three grounds, and no reference, either express or implied, is made in B's points and authorities to the third ground. Such third ground is therefore waived. The two remaining grounds respectively challenge the decision of the trial court as not being sustained by sufficient evidence and as being contrary to law.

B's contention, briefly stated, is in effect as follows, viz.: That the agreement entered into between him and S evidences a definite contract of partnership under which the personal property described therein was subsequently purchased and held for disposition in accord with its terms; that, where the partnership relation exists, the law imposes upon each partner the duty of acting with the utmost good faith toward his copartner, and where one of the partners violates this duty by appropriating the firm property, he will be treated as a trustee of the firm and compelled to account to the other partner, citing: *Love v. Carpenter* (1868), 30 Ind. 284; *Horn v. Lupton* (1914), 182 Ind. 355, 105 N. E. 237, 106 N. E. 708; *Leader Pub. Co. v. Grant Trust, etc., Co.* (1914), 182 Ind. 651, 108 N. E. 121; 30 Cyc 458; 2, 3 Pomeroy, Eq. Jurisp. (4th ed.) §§956, 958, 963, 1062, 1077; 2 Lindley, Partnership (4th ed.) 569; *Mumford v. Murray* (1822), 6 Johns. Ch. (N. Y.) *452. It is claimed by B that the arrangement between S and N, as evidenced by their written agreement, was a violation by S of his partnership agreement with B, and an attempt by S to deprive B of his rights in said partnership property by indirectly converting such property to

his (S's) own use.  S, on the other hand, does not
question the correctness of the legal principle in-
volved in B's contention, but insists that it has no
application to the facts of this case.  Neither is it
contended by S that the agreement between him and
B was not one of partnership, but he does assert that
such agreement was plainly conditional in character,
and that it was to become fully effective only on the
happening of two contingencies:  (1) The termina-
tion of the rights of N in the property in question,
and (2) the satisfactory adjustment of the title of S
to certain other property which was subject to supe-
rior claims.

The evidence affecting and controlling the question
presented by these contentions consisted of the writ-
ten agreement between appellant and appellee, the
written agreement between appellee and Nyberg, and
also certain parol evidence.  We have indicated above
the parts of said respective written agreements which
we think should have influence in the determination of
said question.  The parol evidence pertinent to said
question is to the following effect, viz.:  That when
the assets of the Nyberg Automobile Works were
offered for sale by the trustee in bankruptcy, N en-
deavored to buy in the property in order to save the
plant for future operation; that he was opposed by
other bidders, and that, although without personal
means with which to finance the transaction, he had
been promised the assistance of one Bowen in secur-
ing the necessary funds; that N did not receive the
expected support from Bowen, whereupon B and S
orally agreed with N that they would purchase the
property and extend to him an option for its repur-
chase; that, pursuant to this agreement, they bid

in the property covered by their partnership contract and held the same subject to N's rights.

To be specific, there was parol evidence affecting said question in substance as follows: B testified that S told him that he had to get N's deed to get good title, and that they would have to make the contract conditional upon his being able to get it fixed up.

N testified in effect as follows: I had an arrangement with a Mr. Bowen of Auburn, N. Y., to come to the sale in my interest. On the day of the sale I got a telegram from Bowen in which he mentioned B. I then had a talk with B and told him that Bowen had promised me assistance and that I had a telegram from him in which he said he (B) would look after it for me. I told him I wanted to get the plant back. B then told me that that was his purpose in coming—to frame up a deal whereby I could get it back. S, B and I had a talk to the effect that their bidding would be for me, and I was to have Bowen's backing. I bid $7,000 and thought I had bid it in at this amount. When they were going to open up the bids, B told me that he and S were going to bid it in at $7,500, and that I could get it by paying them $1,000 profit. S told me he would waive his $500; that he did not want any profit out of it. B told me both before and after the sale that he would take care of me, and that the deal would be fixed so that I could get the plant and property. A few days later S and I executed the contract and I then took possession of the property and remained in possession. My wife and I at that time made a quit claim deed to S. I made payments under my contract. S had said he could furnish the money if we would make the deed, which was done. I bought the property about seven

or eight days after the public sale. S did not tell me anything about paying $8,500 cash. He said a deal had been made between him and B whereby I was to get the plant, provided I allowed each a profit of $500, and that he would waive his profit.

S testified to the following effect: I saw B the morning of the sale. He told me Bowen would be there and bid in the property for N. In the afternoon Judge Diven, N and I had a talk, wherein we agreed to buy the plant in for N and save the plant for the town. The next morning B told me that he had given N an option that we would bid the plant in at $7,500 and make the option to him $8,500, giving us a profit of $500 each, if he closed, which would make a pretty good day's work. B said he would do this to square himself with Bowen. I explained to B that the title was mixed up and that I thought Mrs. Nyberg would have her interest, but that if I could arrange with N to get a quitclaim deed, I would carry out the option and contract he (B) had made with N. There was nothing said about the money at that time, except that we would turn it over to N for $8,500, and that I thought N could buy it himself, or that he had friends who would help him. We went to see Mr. VanNuys, the trustee in bankruptcy, and told him we would raise N's bid $500, and then went to see Mr. Otto and Mr. Grossman, who were bidding on the property, and asked them not to raise it, but to keep out, as we were aiming to save the property for N. They would not agree to this at the time, but after N saw them they agreed to it and did keep out. The property was then bid in, but I did not close up the deal until I got a quitclaim deed from N.

Judge Diven testified to the following effect: On

the morning of the sale, after the bids had been received, B, S and I had a talk, in which B suggested that we get the sale held up a day or so, and I asked if it was to be understood that if the sale was held up, the property should be bought in for the benefit of N. They agreed to this and I then saw the trustees and attorneys and told them of the arrangement, and the sale was not closed that day. I told them the bid would be raised. I stated to B and S that I knew N had some arrangement with parties there and that he had a bid. I next saw B at my office on the 19th. S was with him. B had a contract written up between himself and S. I looked it over, corrected and rewrote it as they talked it over. I went into the whole transaction and explained it fully. I then said that S would have to make some arrangement with N to get the quitclaim deed, and, before he could do that, they would probably have to make some arrangement whereby N could close his option. They said that was all right, and that it was to be held for N. The contract was written out and signed and they each took a copy. I then sent for N and explained to him what interest his wife might have; that it would be costly to S to foreclose, and told him if he and his wife would execute a quitclaim deed to S, I thought I could get S to advance the money to make good his, N's, option. He said he would do it. I informed S of this talk, and he agreed to furnish the money, but said that he would have to be protected.

The admission of this parol evidence is not here challenged, nor was it challenged in the trial court by any ground of the motion for new trial; but it is now strenuously insisted by appellant, in effect, that both the contract of partnership and the contract upon

which its breach is predicated are in writing; that they are each certain and unambiguous in their terms and language, and that such being the case, the trial court should have looked to them alone for the determination of both the question of partnership and the question of the breach thereof, and that this court is likewise confined to said evidence; that said parol evidence was not admissible for the purpose of contradicting or disputing either of said writings; that, when said contracts alone are looked to, this court must construe them and say, as a matter of law, that the evidence shows both a partnership between B and S and a breach thereof by S, and hence that the decision of the trial court is not sustained by sufficient evidence and is contrary to law.

Assuming, without so holding, that B is right in his contention that the questions of the partnership and the breach thereof should be determined 2.   from said contracts alone, we think enough appears from them to authorize the decision of the trial court. It will appear from the portions of the agreement between B and S, which we have italicized *supra,* that its existence was predicated on S's being able to secure all of said property by virtue of his lien; that the property purchased should remain in the building where situated *if S secured the same by virtue of his said lien;* that if S was unable to get such "lien question settled and get title to said real estate and other property *satisfactory to him, then this agreement shall not be in force."*

By said agreement S "is authorized to accept payment from and close deal with N, and turn over property to him, in which case S is to pay his $1,000 paid and $500, being ½ of said profit, in full of his interest in this contract."

It is undisputed, and in fact the complaint avers, that appellee mailed B a check for $1,500, which was the admitted amount due for his interest in said property if N purchased it under his option. That part of the contract between S and N which we have set out *supra* recognizes the option theretofore given N by B and S as one of the conditions and a part of the consideration which induced said contract with N, and that portion of the latter contract which we have italicized expressly mentions, as a further inducement and consideration for its execution, the deed from N and wife by which S "becomes the owner absolutely, in fee simple, without any liens  *  *  * or rights in anybody else in and to said property."

The burden was on appellant, not only to show the partnership alleged in his complaint, but likewise its breach, and if, as he contends, we were required to determine said question from said contracts alone, unaided by the parol evidence, we are of the opinion that the decision of the trial court could not be disturbed. However, if said parol evidence may be properly considered, no doubt can remain as to the sufficiency of the evidence to sustain the decision of the trial court. As before stated, the admission of said evidence is not challenged.

It should be noted, in this connection, that said evidence in no way changes the provisions of said written agreement between the parties, but purports only to make clear the references contained in that agreement to the option of N and the securing of other property by virtue of the liens referred to. Inquiry into the purpose of that provision relative to N's option, and the intention of the parties with reference thereto, was expressly invited

by the allegations of appellant's complaint, which we
have quoted and italicized *supra.* B is now in no
position to complain because S's understanding as
to the purpose of the parties differs from his own,
and, under the issues presented by the pleadings,
parol evidence as to the collateral option which was
extended to N was clearly admissible to explain the
situation of the parties when their written contract
was executed, and thus to assist the court in deter-
mining the full purpose of their agreement. *Driscoll*
v. *Penrod* (1911), 176 Ind. 19, 23; 95 N. E. 313; *Reiss-
ner* v. *Oxley* (1881), 80 Ind. 580, 584; *Merica* v. *Bur-
get* (1905), 36 Ind. App. 453, 459, 75 N. E. 1083; *Inter-
national Harvester Co.* v. *Haueisen* (1918), 66 Ind.
App. 355, 118 N. E. 320, 323, 324.

The trial court has concluded that the primary in-
tention of the parties was to provide a plan whereby
N might regain control of his property, and
2.    that the remaining provisions of their agree-
ment were to become operative only in the
event that N's efforts were unsuccessful. This con-
clusion is fully supported by the record.

B makes the further contention, however, that the
option to N contemplated a purchase for cash, and
that when S sold the property to N under an agree-
ment which permitted the latter to pay for the same
on a time basis, he violated the provision of the part-
nership contract and exceeded his authority there-
under. It appears from the record, however, that
when N exercised his option within the agreed period
of ten days, the sum of $1,500 then due B was at once
tendered to him and refused. It is true that the
amount due S as his share of the purchase price was
not formally loaned to N and then repaid to S, but the

omission of this useless ceremony is of no importance. *Robertson* v. *Van Cleave* (1892), 129 Ind. 217, 223, 26 N. E. 899, 29 N. E. 781, 15 L. R. A. 68. In substance, the transaction brought to B every dollar to which he was entitled under the option provision of the partnership contract, and it served to carry out the primary purpose of that agreement. The question of good faith on the part of S was squarely put in issue by the complaint, and the decision of the trial court in his favor is fully sustained by the evidence.

No error appearing in the record, the judgment of the circuit court is affirmed.

Note.—Reported in 119 N. E. 1013. Contracts: general rule that parol evidence not admissible to vary, add to, or alter a written instrument, 17 L. R. A. 270.